James Oakes, Plaintiff and Counter-Defendant, Appellee, v. Maurine Oakes, Defendant and Counter-Plaintiff, Appellant. Claude Oakes and Emily Oakes, Intervenors, Appellees.

### Gen. No. 49,047.

First District, Third Division.
January 16, 1964.

Jacobson, Lieberman, Levy & Levy, of Chicago (Lawrence S. Jacobson, of counsel), for appellant.

Samuel S. Cohon and Wexler & Wexler, of Chicago (Samuel S. Cohon, of counsel), for appellee.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

Subsequent to the entry of a decree of divorce, the husband filed a petition seeking to modify the decree with respect to the custody of a daughter Karyn, then fifteen years old, the eldest of the five children of the divorced parties, and for other relief not here involved. He asked that custody of the child be transferred from her mother to him. At a hearing on the petition Karyn, pursuant to a stipulation made by the parties, was interviewed by the trial judge in chambers out of the presence of the parties, their counsel, or a court reporter. She was not sworn in open court before the interview and so far as appears was not sworn in chambers. The purpose of the interview was to dis-

cover her preference. At the conclusion of the hearing the court announced Karyn's preference for her paternal grandparents, Claude and Emily Oakes, with whom she had stayed at various times when her father came from California to see her pursuant to his right of visitation. The court thereupon transferred custody of Karyn to the grandparents. This appeal was taken by the mother from that order.

■ The issue turns on the interpretation of the written stipulation of counsel for both sides made prior to the examination of Karyn by the court, as well as upon a statement by the wife's counsel that he desired to show that the grandparents' home was not a proper place for the girl and his request that the court hear evidence thereon.

The agreement, among other things, provided that there would be no formal hearing, since no evidence would be offered in support of or opposed to the petition; that the only action to be taken was that Karyn would advise the chancellor in chambers as to her preference, if any, as to custody; that if she advised him that she wished to stay with her mother, an order would be entered denying the petition with respect to her; and that if any dispute should arise with respect to custody, the hearing on the dispute would not be held, but would be continued and set for a subsequent date to be determined by the chancellor.

The chancellor and the father's counsel interpreted the agreement as meaning that Karyn's statement of preference to the judge would be final. The mother's attorney assumed otherwise. There may be some doubt about the interpretation of the agreement, but it appears to us it was intended to be a timesaving arrangement, to be effective only if Karyn decided to remain with her mother. If that happened, the father's petition for her custody would be dismissed. If Karyn preferred to live with someone else, there would be

a hearing at a later date on the suitability of her choice. There was no agreement that Karyn's preference would be binding. But it is clear to us that while her preference was not binding, it was intended to be a most important element in the determination of her custody. That is as it should be. Karyn is now sixteen years old, and it would be difficult to say that a girl of that age, with the experience she has had in the marital controversies of her parents, could be made to stay anywhere other than with someone she preferred.

On oral argument this court was advised that the grandfather had died during the progress of this appeal. This introduces a new element and one of sufficient importance under the circumstances to warrant another hearing by the court on the question of custody. Our primary basis for the necessity of a rehearing, however, is counsel's statement during the course of the argument before the chancellor that the grandparents' home would not provide a proper moral background for the girl. He was not permitted to present any evidence, and while this was a general statement with no support in the record, it was of such importance that the court should have permitted counsel to make proof. Since another hearing has to be had, we have decided to consider some of the other objections to the proceeding which counsel for the mother made in his brief and which may arise again on rehearing of this case.

■ ■ The points made on behalf of the mother while divided into four parts are based on the general proposition that all proceedings of a court should be open and notorious; that an order changing the custody of a minor child entered upon evidence heard or investigations made by the trial judge in chambers and out of the presence of the parties is erroneous, even though counsel for the parties agree or consent

to an independent private interrogation or investigation by the judge.

To support his contention, counsel has cited a number of cases, the oldest of which is Crabtree v. Hagenbaugh, 23 Ill 289 (1860). That case involved communication with a jury by the judge, in the absence of the parties. The court said that while no harm was done, the judgment should be reversed in order to preserve the principle. However, that exacting view is no longer law. People v. Brothers, 347 Ill 530, 180 NE 442; People v. Tilley, 411 Ill 473, 104 NE2d 499; Emme v. Pennsylvania R. Co., 29 Ill App2d 97, 172 NE2d 507. In the latter case this court reviewed the precedents and said, at p 102:

> "Undoubtedly, the early cases in this state prohibited any communication whatever between judge and jury after the jury had retired. Necessity and common sense have brought about a relaxation of that severe discipline. It is now the rule both in civil and criminal cases that a verdict will not be set aside when it is apparent no injury resulted from a communication to the jury either by the court or by third persons."

Other cases cited are Cohn v. Scott, 231 Ill 556, 83 NE 191; Des Chatelets v. Des Chatelets, 292 Ill App 357, 11 NE2d 13; Williams v. Williams, 8 Ill App2d 1, 130 NE2d 291; Albert v. Albert, 340 Ill App 582, 92 NE2d 491; Ledbetter v. Ledbetter, 25 Ill App2d 478, 167 NE2d 247. We will examine these cases.

In Cohn v. Scott, supra, counsel agreed that the chancellor should investigate the character of the mother and her home surroundings. The chancellor apparently made no investigation, but decided the case on what he had *heard* of the appellant's husband, and from that concluded that the child would not be injured if placed in the custody of the mother. The

Supreme Court said, at p 559: ". . . *a very large discretion must be permitted the chancellor hearing these cases,* yet it must be a judicial discretion and subject to review. . . ." (Emphasis added.) The court found that the evidence showed that the best interests of the child required it to remain in the custody of the father. In the Des Chatelets case the principal question was whether a change of venue, which the chancellor had denied, was in proper form. The court held that it was. Whether the chancellor could properly consider a "confidential report from the social service department," was also considered. Nothing was preserved in the record as to the nature of the report, and the court held that this was error. The Williams case was also decided on a confidential report of the Cook County Bureau of Public Welfare, and the court held it was error for the court to have considered this report in modifying the decree with respect to custody. The Albert case was a contested suit for divorce in which it was agreed that a twelve-year-old child of the parties should be examined by the judge in chambers, not with respect to his custody, but with respect to the grounds for divorce. The court held it was error to receive such testimony out of the presence of the attorneys. It is not in point as to the issue before us. The Ledbetter case, decided in the Second District, held it was error for a chancellor on a petition for modification of a decree for divorce to award custody of a minor child based on personal talks which the trial court had with the child, with the aunt of the child and her husband, and with the mother and father of the child, all outside the record.

The foregoing cases, while they may be distinguished, present formidable support for defendant's position on the issue. Yet in considering them, we must take into account the extraordinary conditions and the realities of divorce procedure as it has developed in recent years and as it is now conducted.

A survey of suits involving marital controversies in the Circuit and Superior Courts of Cook County shows approximately 16,000 cases filed in the year from September 1962 through August 1963, and some 15,275 cases disposed of. An average of 160 motions a day are disposed of by two judges. One-fourth to one-third of these are contested in varying degrees and involve the hearing of statements by the parties, argument by counsel and testimony relating to alimony, custody, attorneys' fees and other miscellaneous controversies. To assume or hope that these proceedings are or can be molded in the character of a normal civil suit is naive and renders a disservice to the children who are the victims of this type of litigation. The acrimonious atmosphere in which a child is required to state in open court his preference as to custody is well known. Often the primary concern, the welfare of the child, is lost in the violent charges and countercharges of the contesting parties. This atmosphere is heightened when the contesting parties or relatives are present in the courtroom.

To have a child face such an array of belligerence and state on which side his preference lies is inhuman and, for judicial purposes, useless. Hatred and revenge as a rule possess the contesting parties. In the instant case, although only $15 a week per child was provided for support, the litigants sought and obtained lawyers and made a legal issue on almost every question which arose with respect to those unfortunate children. Conscientious chancellors have attempted to solve the problem by having the child state his views and preference in the relative privacy of the chancellor's chambers. There is adequate basis in law for this procedure.

Illinois courts have always recognized the fundamental interest of the state in the welfare of its minor citizens. The Supreme Court of this state, in County

of McLean v. Humphreys, 104 Ill 378 (1882) said, at p 383:

"It is the unquestioned right and imperative duty of every enlightened government, in its character of parens patriae to protect and provide for the comfort and well-being of such of its citizens as by reason of infancy . . . are unable to take care of themselves. The performance of this duty is justly regarded as one of the most important of governmental functions and all constitutional limitations must be so understood and construed as not to interfere with its proper and legitimate exercise."

Where a suit relative to the person or property of an infant is instituted in a court of chancery, he is treated as the ward of the court and is under its special protection. Gerst v. Gerst, 349 Ill App 201, 110 NE2d 470; Harms v. Harms, 323 Ill App 154, 55 NE2d 301; Szewczyk v. Szewczyk, 320 Ill App 562, 51 NE2d 801. This special care exercised by the court on behalf of minors distinguishes custody cases from adversary proceedings. It is the child that is the issue, not property. The state is present in the person of the court to protect the child and to do what is best for his welfare. Modern psychiatry has established that great and permanent harm can be done a child thrown into the maelstrom of parental conflict. Common sense tells us no less that the "notorious and public hearing" prescribed for ordinary litigation is indeed "notorious" in the worst sense when applied to custody cases. The right of the court to exercise a proper discretion with respect to interviewing the child in chambers should be legalized, and it is our conclusion that it was properly done in the instant case. To protect the right to appeal, the court upon motion should state for the record, if that becomes

394

necessary, the substantive parts of the child's statement to him.

The order is reversed and the cause is remanded for the sole purpose of having the court hear the question presented by the mother as to the moral character of the grandmother and to what extent the death of the grandfather has changed conditions insofar as they are relevant to the issue. If she fails in this respect, no fees or costs should be allowed her for the expense of the litigation.

Order reversed and cause remanded with directions.

McCORMICK and DEMPSEY, JJ., concur.