LEONARD RATHKE, Plaintiff-Appellee, *v.* SHARON LEE RATHKE PEEBLES, Defendant-Appellant.

(No. 74-400;

Fifth District—August 27, 1975.

Bock & Stenger, of Belleville (Ralph T. Stenger, of counsel), for appellant.

Freeark & Harvey, of Belleville, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

This appeal is from an order of the Circuit Court of St. Clair County modifying a divorce decree and awarding custody of two minor children of the parties to the father, plaintiff-appellee.

Defendant-appellant presents two issues for review: whether the court committed reversible error in refusing to interview the children *in camera* concerning their home life with the mother and their preference as to custody and whether the decision of the trial court is against the manifest weight of the evidence.

The parties were divorced on March 20, 1973, and custody of their minor children, Tim, age 6, and Linda, age 9, was awarded to the mother. On February 13, 1974, the father filed a petition to modify the decree alleging substantial changes in circumstances affecting the welfare of the children which would require a change in custody and further alleging a voluntary surrender of actual custody by the mother to the father. The petition alleged, *inter alia*, the inability of the mother to give the children proper home care, maintain discipline and provide a healthy and wholesome atmosphere for their general welfare and education. The petition charged that the mother had surrendered actual custody to the father upon her remarriage and relocation in Iowa with her new husband. The allegations were denied; the mother alleged the agreement as to custody was that the father would care for the children until she established a suitable home after her remarriage, at which time the children would be returned to her.

A hearing was held on the petition on March 18, 1974. On April 11,

1974, an order was entered granting custody to the father; a motion to reconsider, or in the alternative for a rehearing, was denied on July 10, 1974, the order reciting as findings of fact that the children had been subjected to an unclean home environment, had been improperly fed and clothed and that the mother had voluntarily surrendered custody to the father. The same order fixed appellant's visitation privileges.

The parties stipulated that prior to the hearing on March 18, the appellant stated to the court that she desired to reserve her right to call the children, then ages 7 and 10, as witnesses "on her behalf." Apparently, appellant desired that they testify *in camera*, out of the presence of counsel, and be questioned about their custodial preference and their home life with the mother. Appellant stated that she desired this *in camera* interview only if the court should seriously consider a modification of custody as otherwise she did not desire that the children be required to choose between their parents. The court declined to allow the children to testify or state a preference, holding that the testimony or preference of children of such tender years was entitled to no weight in a determination of their custodial best interest.

The testimony at the hearing was in sharp dispute. Pursuant to the decree of divorce, the marital home of the parties was sold and the proceeds divided. Plaintiff's evidence was that defendant squandered her share of the proceeds, some $8,000, her entire resources, as a down payment on a home which was unfit for habitation. She thereupon moved into a mobile home, and it is the care and discipline of the children during the period of time that defendant occupied this mobile home, from August to October, 1973, that is the basis for the court's order. The court confined the evidence to this period of time and would not consider defendant's offer of evidence of her subsequent marital circumstances. Defendant at the time of the hearing had returned to the Belleville, Illinois, area with her husband.

Plaintiff testified that defendant failed to maintain the mobile home in a state of cleanliness; that spoiled food and garbage were in and about the refrigerator and kitchen and that dirty clothes were strewn about the mobile home. He testified that when he visited he observed a complete lack of discipline of the children and that their clothes were soiled and torn. He further testified that when defendant advised plaintiff of her impending remarriage and move to Iowa, the parties agreed he would assume custody and move into the mobile home, enabling the children to continue in school without interruption; this he did. He testified to the filthy condition of the mobile home and the children's clothing; the details need not be related. The evidence, if believed by the trial court, was sufficient to prove that the condition of filth present rendered the quar-

ters uninhabitable. The existence of these conditions was corroborated by testimony of a baby sitter who also testified that she was required to take the children to her home for meals since no wholesome food was available at the mobile home.

There was evidence that the boy, Tim, exhibited severe behavioral problems at school during this period of time but that these problems greatly improved after his father moved into the mobile home and expressed interest in his school performance and discipline. The existence of these problems and their subsequent improvement was corroborated by testimony of Tim's grade school teacher.

Defendant's testimony, corroborated by a friend and members of her family, was that the mobile home was clean, the children were well fed and clothed and, in substance, was a complete negation of the allegations and case made by plaintiff.

■■ Defendant assigns as error the refusal of the trial court to interview the children *in camera* as to the conditions of their home life and their custodial preference. There was a sharp conflict in the testimony concerning the care and discipline given the children by the mother, but the children were never offered as witnesses. We know of no procedure that would authorize the court to inquire, in the privacy of chambers, out of the presence of counsel, into the basic factual matters in dispute, the truth or falsity of which form the basis for the court's decision on the ultimate question of custody. We are not suggesting that the court does not have discretion to utilize this procedure with agreement of the parties in a proper case. Considering, however, the age of these children (*Osman v. Osman*, 130 Ill.App.2d 830, 264 N.E.2d 263 (1970)), and the nature of the information to be requested of them, we are convinced that no error was committed in the instant case. These children could hardly be competent to furnish helpful information on the matters in dispute. The issues were the health, education and welfare of the children; in this case we fail to see how their testimony would be helpful to the trial court in resolving the factual conflict before it, considering the record as a whole.

We believe the same logic disposes of appellant's contention that the children should have been allowed to express their custodial preference. We are not convinced that the preference of children age 7 and 10 would ever be entitled to serious consideration in matters of custody. (*Stickler v. Stickler*, 57 Ill.App.2d 286, 206 N.E.2d 720 (1965).) We are firmly convinced that no error was committed here where the matters in dispute affecting custody involved the mother's ability to provide adequately for the health, education, discipline and general welfare of the children. If the trial court believed the father's testimony, as it obviously did, no expression of a desire to remain with the mother should be considered by

the court in reaching its decision. See *Filipello v. Filipello*, 130 Ill.App.2d 1089, 1096, 268 N.E.2d 478, 483 (1971).

We are not disapproving the procedure followed in *Oakes v. Oakes*, 45 Ill.App.2d 387, 195 N.E.2d 840 (1964). A child's custodial preference may be an appropriate factor for the court's consideration where the child is of more mature age. (See *Rosenberger v. Rosenberger*, 21 Ill.App. 3d 550, 316 N.E.2d 1 (1974); *Elble v. Elble*, 100 Ill.App.2d 221, 241 N.E. 2d 328 (1968).) We should note that the record contains no suggestion of a custodial preference here.

■■ Defendant argues that the decision below is against the manifest weight of the evidence or results in a manifest injustice. From our previous review of the evidence, we find sufficient evidence to support the trial court's decision. "It is well established in Illinois law that a trial court's determination of what is in the best interests of the child should not be reversed unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred." (*Rosenberger v. Rosenberger*, 21 Ill.App.3d 550, 553, 316 N.E.2d 1, 3 (1974); *Marcus v. Marcus*, 24 Ill.App.3d 401, 320 N.E.2d 581 (1974).) We feel there is ample evidence of a change of circumstances in the ability of the mother to provide care, training and discipline which affected the welfare of the children and justified the custodial change.

Defendant has suggested that the lower court had available to it alternatives to assist in its determination of the psychological impact of its decision on the children and suggests a child agency investigation, a psychiatric examination or the appointment of a guardian to represent the best interests of the children. None of these aids was suggested to the court by the defendant before or during trial, and it is a sufficient answer to observe that the court did not feel the need for such assistance on its own motion after careful evaluation of the evidence before it.

■■ The order of the court found that the mother had voluntarily surrendered custody to the father. Only the decree of a court of competent jurisdiction could effect a change of custody, and we consider the relinquishment of actual temporary custody as significant only to the extent that it might bear on defendant's conduct in exhibiting proper parental interest and providing proper care. See *Marcus v. Marcus*.

We have examined the evidence closely and find no reason to reverse the trial court's judgment. Accordingly the judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

JONES, P. J., and CARTER, J., concur.