BERNICE L. JINES, Petitioner-Appellee, *v.* RICHARD D. JINES, Respondent-Appellant.

Fifth District   No. 78-257

Opinion filed August 4, 1978.

Edward J. Kionka, of Columbia, and Freddy L. Shapiro, of Murphysboro, for appellant.

Wolff, Jones & Lawder, of Murphysboro, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Respondent Richard Jines appeals from orders of the Circuit Court of Jackson County awarding custody of Shelley Jines to petitioner Bernice Jines, following dissolution of the parties' marriage, and refusing to vacate that award.

The parties were married in 1963 in Minnesota, but moved to Murphysboro, Jackson County, the following year shortly after the birth of their only child, Shelley. In 1974, the couple's first marriage ended in divorce; however, in December of that year they remarried. Their second marriage was dissolved by an order of the Circuit Court of Jackson County following a hearing on November 15, 1977. At the hearing, only the petitioner appeared and testified, the parties having previously entered into an agreement concerning alimony, child support and custody, visitation, and disposition of their property and assets. Custody of the parties' child, Shelley, was awarded to the petitioner, and the respondent was granted "reasonable rights of visitation and temporary custody at all reasonable times and all reasonable places."

On December 9, 1977, respondent filed a post-trial motion, supported by his affidavit, in which he alleged that there had been a material change in circumstances in that there existed new facts affecting the custody and support provisions of the judgment of dissolution and materially affecting the welfare of their child. The motion recited that following entry of judgment of dissolution, the petitioner had first informed the respondent that she intended to move to Mankato, Minnesota, and establish residence there, which she in fact did, alone, a few days prior to December 9, 1977.

It was alleged that 14-year-old Shelley had expressed a desire to remain in Murphysboro until completion of her eighth grade year. The respondent prayed for appointment of separate counsel for Shelley, an evidentiary hearing to present new facts and for modification of the child custody and support provisions of the judgment of dissolution.

On February 3, 1978, a hearing on the post-trial motion was held. With the consent of both parties, the trial judge interviewed Shelley *in camera* immediately prior to the hearing. During the interview, Shelley stated that she desired to remain in Murphysboro where she could go to high school with her friends. It was also revealed that Shelley had visited with the petitioner on only one occasion for a period of two hours since her mother had moved to Minnesota.

Dr. Lee Becker, a clinical psychologist with experience in family counseling, appeared at the hearing on behalf of the respondent Becker testified that he had interviewed Shelley on two occasions in January 1978, at the respondent's request. On both occasions, only the respondent was present or nearby during the sessions. Becker stated that the important factors to be considered when a child is a product of a broken home were predictability or consistency of the child's environment, and her relationship with her peers. In this regard, he opined that although Shelley could probably adjust either way, it would be less stressful for her to remain in Murphysboro absent compelling reasons to the contrary.

Respondent testified that he has been employed for several years by the United States Post Office in Carbondale, Jackson County, where he works the early morning shift. He stated that he lives with Shelley in a two-bedroom mobile home located near his mother's home on the outskirts of Murphysboro. He explained that Shelley usually stays at his mother's house on those nights that he works. According to the respondent, Shelley is an excellent student and is anxious to enter high school in Murphysboro in the fall of 1978. He also related that Shelley has several close friends with whom she is involved in school, church and social activities in Murphysboro. He further testified that Shelley enjoys a close relationship with both himself and her paternal grandmother.

It was the petitioner's testimony that she is now a permanent resident of Minnesota where she is employed by the Blue Earth County Director of Court Services in Mankato, and that she has no intention of returning to Illinois. She related that she had been living with her sister since moving to Mankato, but that she expected to move into a two-bedroom apartment in that city. She stated that her brothers and sisters as well as Shelley's maternal grandparents resided in Minnesota. She testified that inasmuch as Shelley has reached the age of puberty, she will be in need of the experience, understanding and counseling of her mother. She also said that Shelley had experienced menstrual problems in the past that could

recur, and that she felt she would be better able to handle any such future problems than would the respondent.

At the close of the hearing, the trial court ruled that the judgment of dissolution would be modified so as to grant the respondent custody of Shelley until the end of the current school year, after which custody would be in the petitioner. In reaching its decision the court stated in relevant part:

> "Now for these reasons I am going to make this order: If this was a boy my attitude would be different, but this is a girl child, as mentioned by Mrs. Jines, she certainly needs the care and attention of her mother. Grandparents do not suffice in this instance, even on the maternal side and during this growing up stage, I think it is very beneficial to have the mother's advice."

The court also granted the respondent temporary custody of Shelley during the summer months commencing in 1979, as well as visitation privileges any weekend he went to Minnesota. At the court's direction, counsel for the respondent prepared an order incorporating the terms of the announced ruling. However, the order submitted by respondent's attorney was rejected by the court after it determined that it did not accurately state the court's position. Thereafter, a motion for clarification was filed by the respondent which was considered and rejected by the court, and counsel for the petitioner was directed to prepare the order which was finally entered by the court on April 17, 1978.

On May 16, 1978, respondent filed a verified motion to vacate the April 17 order and for a change of venue from the trial judge. In his motion, respondent alleged that following the February 3 hearing, a conference was held in chambers between the parties and the trial judge which concluded with the judge announcing an agreement whereby Shelley's preference for a custodial parent would be honored after she spent the summer in the petitioner's custody in Minnesota. However, when respondent's counsel submitted a proposed order incorporating that agreement, the court rejected the order and instead signed one prepared by petitioner's counsel which was silent as to the agreement. The motion also recited that the April 17 order had caused Shelley great emotional strain and that she was under the care of Dr. Becker; that Dr. Becker had indicated that Shelley could suffer irreparable emotional harm, and could run away, if she was compelled to leave the custody of the respondent; and that Shelley had expressed a desire to remain in Murphysboro to live with her father and attend school there. The motion prayed that the April 17 order be vacated and that an evidentiary hearing on the matters alleged be held so as to enter a final order reflecting the best interests of Shelley, or in the alternative to modify the order to incorporate the oral agreement of the parties. On May 31, 1978, respondent filed a petition to

appoint W. Charles Grace, or some other attorney, as separate counsel for Shelley.

On June 1, 1978, a hearing was held on the respondent's motion and petition. Respondent's motion for a change of venue was denied, the court noting that it had made substantial rulings in the cause. In regard to the conference in chambers following the February 3 hearing, the trial court confirmed that it had concluded that it would "take serious consideration" of Shelley's custodial parent preference after she had spent the summer with the petitioner; however, the court noted that its earlier statement was not a part of the proceeding and was not to be reflected in its order. In support of his motion to vacate, respondent offered the testimony of Dr. Becker who was present in court and had been counselling Shelley since the February 3 hearing. According to the respondent, Becker would testify to the changes in Shelley's emotional condition subsequent to the February 3 hearing. The court denied this offer of proof and also denied the petition to appoint separate counsel for Shelley, the court reasoning that the allowance of the request would only result in a duplication of all of the efforts previously made by the respondent.

During arguments on the motions, the court reaffirmed its position that if Shelley determined at the end of the summer she did not wish to continue living with the petitioner in Minnesota, another hearing on the matter could be held and her wishes would have a "great effect" upon the court. After further arguments by counsel, the court denied the motion to vacate after concluding that it would be unjust to deny the petitioner an opportunity to merely see if the child would decide to stay with her. On June 5, 1978, the trial court entered its order denying the motion and petition from which the respondent prosecuted this appeal. On June 15, 1978, this court entered an order staying enforcement of the order of the trial court and establishing an accelerated briefing and argument schedule.

On appeal, respondent contends that the trial court erred in awarding custody of Shelley to the petitioner and in refusing to appoint separate counsel for the child.

■■ The courts of review in Illinois have consistently and repeatedly held that the determination of matters of child custody rests largely in the broad discretion of the trial court, and that its determination with respect thereto should not be disturbed on appeal unless a manifest injustice has been done (*Rodely v. Rodely*, 28 Ill. 2d 347, 192 N.E.2d 347 (1963); *Christensen v. Christensen*, 31 Ill. App. 3d 1041, 335 N.E.2d 581 (2d Dist. 1975); *O'Donnell v. O'Donnell*, 5 Ill. App. 3d 870, 284 N.E.2d 682 (4th Dist. 1972)). In resolving child custody disputes, the overriding consideration of the trial court is the welfare of the child; hence, the rights

and interests of the contesting parents must necessarily be subservient to the interests and well-being of the child. (*Hinton v. Searles*, 53 Ill. App. 3d 433, 439, 368 N.E.2d 937, 942 (5th Dist. 1977).) We are of course mindful of the superior position enjoyed by the trial court reaching its decision in this case. Its vantage point allowed it to observe Shelley and both of her parents, thus affording it the ability "to assess and evaluate their temperaments, personalities and capabilities." (*Marcus v. Marcus*, 24 Ill. App. 3d 401, 407, 320 N.E.2d 581, 585 (1st Dist. 1974).) Nevertheless, after careful examination of the testimony and of the briefs filed by counsel, we are compelled to conclude that the decision appealed from is contrary to the manifest weight of the evidence and its enforcement would not be conducive to Shelley's best interests and welfare.

■■ Respondent argues that in reaching its decision to award custody of Shelley to the petitioner, the trial court improperly gave undue weight to the sex of the child and her respective parents. While we do not believe that the lower court's decision was solely predicated on this factor, we are of the opinion that the court's ruling reflects that it gave Shelley's sex undue consideration. As the respondent correctly asserts, there is no rule or presumption in contested child custody cases favoring the mother over the father; rather, the increased recognition of the equality of the sexes has resulted in placing the parents on equal footing insofar as their rights to custody of a minor child are concerned. (*Strand v. Strand*, 41 Ill. App. 3d 651, 355 N.E.2d 47 (2d Dist. 1976); *People ex rel. Irby v. Dubois*, 41 Ill. App. 3d 609, 354 N.E.2d 562 (1st Dist. 1976); Schiller, *Child Custody: Evolution of Current Criteria*, 26 DePaul L. Rev. 241, 244-45 (1977).) Although in the past courts have invoked a "tender years" doctrine whereby custody of a child of tender years would be awarded to the mother, the doctrine appears to be of questionable current validity; and in any event it would not apply to a 14-year-old girl. (*Pratt v. Pratt*, 29 Ill. App. 3d 214, 330 N.E.2d 244 (4th Dist. 1975); *Patton v. Armstrong*, 16 Ill. App. 3d 881, 307 N.E.2d 178 (5th Dist. 1974).) Moreover, no natural equities exist in favor of a mother who will be working and will not remain full-time in the home. *Patton v. Armstrong.*

■■ Section 602 of the Illinois Marriage and Dissolution of Marriage Act provides that in determining custody in accordance with the best interest of the child, the trial court shall consider the following factors: (1) the wishes of the child's parents as to her custody; (2) the wishes of the child as to his custodian; (3) the interaction and interrelationship of the child with her parents, her siblings and any other person who may significantly affect the child's best interest; (4) the child's adjustment to her home, school and community; and (5) the mental and physical health of all individuals involved. (Ill. Rev. Stat. 1977, ch. 40, par. 602.) We are of the opinion that the application of this statutory criteria in determining the

best interests of Shelley compels a finding in favor of the respondent.

In the present case, it is clear that both parties are fit parents who love their daughter and are deeply concerned with her future welfare. It is also clear that although Shelley loves and cares for both of her parents, she has consistently expressed a preference to remain with her father in Murphysboro. Such a preference, especially that of a 14-year-old child, should be given serious consideration by the court particularly where the child's desire is based upon reasons related to her best interests. (*Patton v. Armstrong*, 16 Ill. App. 3d 881, 307 N.E.2d 178 (5th Dist. 1974); *Marcus v. Marcus*, 109 Ill. App. 2d 423, 248 N.E.2d 800 (1st Dist. 1969).) It is apparent that Shelley's custodial preference is not merely a choice of one parent over the other; rather, her choice is primarily based on her desire to remain in Murphysboro with her friends and to attend high school there. She is a bright, active girl who is quite naturally reluctant to be uprooted to a new environment. While we do not find that Shelley's preference alone warranted that she remain with the respondent, we believe that the total situation presented to the trial court, in light of the applicable factors, compelled such a decision. Although neither the parties nor Shelley have any present physical or mental health problems, the evidence indicated that continuity of environment would be more conducive to the child's well being. For all of the foregoing reasons, we do not believe that the reasons advanced by the petitioner justify removal of Shelley from her present environment. We are of course hesitant to substitute our opinion for that of the trial judge, but from our examination of the record and after weighing all of the factors involved we conclude that Shelley's welfare will be best served if the respondent is awarded custody.

■■ Our determination renders it unnecessary to reach the respondent's second claim of error, however, we feel compelled to comment upon it. Section 506 of the Act provides that the court may appoint an attorney to represent the interests of a child with respect to a custody determination (Ill. Rev. Stat. 1977, ch. 40, par. 506). Respondent initially requested that the court appoint separate counsel for Shelley in his December 9, 1977, post-trial motion and renewed this request in a petition filed on May 31, 1978. Although this request was not actually urged on the court until the June 1, 1978, hearing, we believe that it was incumbent upon the trial court to act earlier on the request, even if on its own motion. The instant case clearly presented a situation where appointment of separate counsel for the child was necessary. A third voice in the proceedings, apart from the interested litigants, could have greatly assisted the court in determining the child's best interests.

For the reasons stated, the order of the Circuit Court of Jackson County is reversed and this cause is remanded to the trial court with directions

that an order be entered awarding custody of Shelley to the respondent, and that arrangements be made to ensure reasonable visitation privileges to the petitioner.

Reversed and remanded with directions.

EBERSPACHER, P. J., and JONES, J., concur.