*In re* MARRIAGE OF CAROLINE ALICE LOVEJOY, Petitioner-Appellee, and CHARLES VERNON LOVEJOY, Respondent-Appellant.

Third District No. 79-381

Opinion filed May 12, 1980.

Dorothea O'Dean, of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellant.

Gregory McClintock, of Kritzer, Stansell, Critser & Whitman, of Monmouth, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

The respondent, Charles Lovejoy, appeals from the judgment of the Circuit Court of Henry County in the marriage dissolution action between the parties. He contends that the trial court abused its discretion by awarding custody of the couple's three daughters to Mrs. Lovejoy and by awarding her the marital home for so long as she remains single and resides therein with a minor child. He further contends that the court abused its discretion in awarding maintenance to Mrs. Lovejoy, and that the amount of such maintenance, $40 per week, is excessive.

On November 18, 1978, Caroline Lovejoy petitioned the court to dissolve her marriage to Charles Lovejoy. Mr. Lovejoy counterpetitioned. On December 12, 1978, the Circuit Court of Henry County awarded temporary custody of the couple's three daughters to Charles Lovejoy, along with exclusive possession of the marital home until further order of the court. Mrs. Lovejoy was awarded $25 per week temporary maintenance. On December 21, 1978, grounds for the dissolution of the marriage were found to exist, such grounds being mental cruelty on the part of Charles Lovejoy. On March 1, 1979, the marriage was dissolved. The court awarded custody of the three daughters to Mrs. Lovejoy, with Mr. Lovejoy to receive liberal visitation. Mr. Lovejoy was ordered to pay $20 per week support for each child, as well as $40 per week maintenance for Mrs. Lovejoy. Mrs. Lovejoy was awarded possession of the marital home until either she remarries or ceases to reside in the house or until the youngest daughter attains her majority. In the event of any of the foregoing, the residence is to be sold, with the net proceeds divided equally between the parties. Mr. Lovejoy has estimated the value of the house to be approximately $30,000.

Mr. Lovejoy's first contention of error is that the court abused its discretion in awarding custody of the three minor daughters to Mrs. Lovejoy. Both Mr. and Mrs. Lovejoy were found to be fit parents, and the record supports such a finding. However, the trial court found it in the best interests of the minor children that their custody be vested in Mrs. Lovejoy. The children are: Holly, age 14 at the time of the custody award, Celia, then age 11, and April, then age 8. The judge interviewed the two older children *in camera* and discovered that Holly preferred to live with her mother. In fact, a week before the hearing, Holly had moved out of Mr. Lovejoy's home and went to live with her mother. Celia, the middle child, said that she wished to remain in the marital home with her father. At this time, Mrs. Lovejoy was residing in Roseville with her parents. Mrs. Lovejoy argues that Celia's expressed desire only reflected a wish to stay in Galva, the site of the marital home. However, the judge said that he took her communication to mean that she preferred to live with her father. Several witnesses were called. The concensus was that Mr.

Lovejoy was domineering and inflexible, but that he loved and was loved by his children. He aided them with their school work and their part-time jobs as paper carriers, and attended community, school, and church functions with them. After some suggestions were offered by a school special education counselor, the house was kept neat and clean. Celia and Holly cleaned the house. Celia and Mr. Lovejoy did the marketing. Holly did the laundry, and Celia did most of the cooking. Holly babysat for the younger children. Mr. Lovejoy holds two jobs and works approximately 12 hours per day plus half a day on Saturday. He and the girls got some help around the house from his 76-year-old mother.

The parties' minister opined that the children would be better off with their mother. The special education counselor thought that they should stay with their father. Mr. Lovejoy objects to the fact that Mrs. Lovejoy drinks wine and that she smokes cigarettes in the presence of Holly, who has asthma. There was no evidence that Mrs. Lovejoy has any alcohol related problems, and Holly, the asthma sufferer, voluntarily moved in with her, after leaving Mr. Lovejoy's home.

Section 602 of our Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 602) requires that "[t]he court shall determine custody in accordance with the best interest of the child." "The courts of review in Illinois have consistently and repeatedly held that the determination of matters of child custody rests largely in the broad discretion of the trial court, and that its determination with respect thereto should not be disturbed on appeal unless a manifest injustice has been done." *Jines v. Jines* (1978), 63 Ill. App. 3d 564, 568, 380 N.E.2d 440.

"The court shall consider all relevant factors including:

* * *

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest; [and]

(4) the child's adjustment to his home, school and community." Ill. Rev. Stat. 1977, ch. 40, par. 602(a).

While the last factor enumerated, the child's adjustment to his home, school and community, might suggest that the best interests of the children might be served by allowing them to stay in their home community of Galva, where their father still resides, the other factors listed suggest that the children would be better off with their mother. The 14-year-old child has expressed a desire to live with her mother, the 11-year-old child a desire to live with her father. The Act requires that the court consider the wishes of the children. When these wishes conflict, the court does not abuse its discretion in giving greater weight to the desires of the older and more mature child. (*Cf. Rosenberger v. Rosenberger* (1974), 21 Ill. App. 3d 550, 553, 316 N.E.2d 1.) It has been held that the

preferences of a 10-year-old child should never be entitled to serious consideration in matters of custody. (*Rathke v. Peebles* (1975), 31 Ill. App. 3d 711, 714, 334 N.E.2d 362.) While we do not subscribe to such a blanket holding, we do not find that the trial court abused its discretion in giving greater weight to the custodial wishes of 14-year-old Holly than to those of 11-year-old Celia. While Celia may have enjoyed the considerable responsibility she had in Mr. Lovejoy's household, we do not think it unreasonable that it might be in the best interest of this 11-year-old if she were relieved of some of this burden. Prior to the marital breakup, Mrs. Lovejoy bore the major burden of housework.

The trial court concluded that it would be in the best interests of the children for them to remain together. Until Mr. Lovejoy filed his post-judgment petition, neither party requested that the children be separated from one another. Generally, it is thought that children ought not to be separated if some semblance of a family unit is to be maintained. Here there was no showing that the best interests of the children will be served by making different custodial arrangements. *Temple v. Temple* (1977), 52 Ill. App. 3d 851, 855, 368 N.E.2d 192.

Mr. Lovejoy argues that the award of the girls to their mother was based on the now-discredited "tender years" doctrine. (See *Jines v. Jines* (1978), 63 Ill. App. 3d 564, 569, 380 N.E.2d 440.) We do not agree. The court did not find that the children, because of their tender years, required a mother's care. The court did find that three girls, two of whom were adolescents, could benefit from being with their mother when there was no showing that they required the greater discipline the court found might exist in the home of Mr. Lovejoy. No natural equities exist in favor of a mother who will be working and will not remain full time in the home. (*Jines v. Jines* (1978), 63 Ill. App. 3d 564, 569, 380 N.E.2d 440.) It is assumed by the parties and the court that Mrs. Lovejoy will have to work. However, at the time of the hearing, she was working at a temporary job, which was to end for the summer and might not be renewed. Prior to that she had worked only part time. Mr. Lovejoy, in contrast, was working 12 hours per day, four days a week, 8 hours on Friday, and half a day on Saturday. While he managed to spend some time with his children, the burden of household chores fell largely upon them. When Holly moved out of his house, he was required to hire a babysitter. Mrs. Lovejoy had primary responsibility for home and child care throughout the duration of the marriage. The court did not abuse its discretion in concluding that her contribution to the home and children would continue even though she would be forced to be employed outside the home. Nor did the court abuse its discretion in finding that three girls, two of whom were adolescent, would benefit from the care of a woman, a point which Mr. Lovejoy concedes, at least as regards the female "facts of life."

■■ We must, therefore, conclude that the trial court's finding, that the best interests of the three minor daughters would be served by awarding their custody to Mrs. Lovejoy, was neither palpably erroneous nor contrary to the manifest weight of the evidence. The trial court did not abuse the discretion with which it is invested.

■■ Mr. Lovejoy also petitions this court for award of the marital home. The rationale of this prayer is that the children should reside in the marital home. Because we do not disturb the trial court's judgment as to the custody of the children, we shall not disturb the court's judgment as to the disposition of the marital home.

The appellant next contends that the court erred in awarding maintenance to Mrs. Lovejoy, or, in the alternative, that such maintenance is excessive. Under the new Act, maintenance may be awarded only if the court finds that the spouse seeking maintenance:

"(1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and

(2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home, or

(3) is otherwise without sufficient income."

Ill. Rev. Stat. 1977, ch. 40, par. 504(a).

Mrs. Lovejoy was awarded the marital home for so long as she resides therein, remains single, and at least one of the children remains a minor. Because Mrs. Lovejoy has moved out of the marital home in order to obtain employment, the home is to be sold, with the proceeds divided between the parties. Mr. Lovejoy is responsible for house payments of $100 per month plus a balloon payment of $11,792 due September 1, 1980. He is also responsible for a purchase money loan taken for the carpeting. Mrs. Lovejoy was awarded a 1975 Dodge automobile, while Mr. Lovejoy was awarded a relatively new van, on which payments are still owing. While half the sale price of the marital home will gross Mrs. Lovejoy a lump sum of approximately $15,000, according to Mr. Lovejoy's evaluation, she is still faced with the problem of housing herself and her three children. The record is consistent with a finding that Mrs. Lovejoy "lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs."

■■ Furthermore, Mrs. Lovejoy is still "unable to support herself through appropriate employment" and "is otherwise without sufficient income." During her marriage, she worked only part-time in a restaurant, earning $40 to $50 per week and temporarily as a sales clerk in a department store. Since the divorce, she has found employment as a cook at Western Illinois University in Macomb, but was to be laid off during the summer when the

*student population normally is reduced;* there was no guarantee that she would be rehired. Therefore, the award of maintenance was consistent with the Act and was not an abuse of the court's discretion.

Regarding the amount of maintenance awarded, the Act states:

"(b) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, after consideration of all relevant factors, including: (1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties; and

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance."

Ill. Rev. Stat. 1977, ch. 40, par. 504(b).

The parties had been married 16 years. At the time of the divorce, Mrs. Lovejoy was 35 years old and Mr. Lovejoy was 42. Mrs. Lovejoy is a high school graduate, but apparently has no marketable skills. She has been employed solely in low-paying, unskilled jobs. During most of the couple's married life, Mrs. Lovejoy was a full-time homemaker. Mr. Lovejoy maintains that he earns $250 per week gross at his full-time job and cannot afford maintenance payments. However, the record indicates that he has a second job and an actual gross income of approximately $375 per week, netting $301 per week. His net income is, therefore, $15,652 (52 x $301) per year. Of this, the amount accruing to his ex-wife and children are:

| | |
|---|---|
| Maintenance at $40 per week | $2,080.00 per year |
| Child support at $20 per week per child = | 3,120.00  "  " |
| House payments at $100 per month = | 1,200.00  "  " |
| Carpet payments at $45.04 per month = | 540.00  "  " |

TOTAL ............................... $6,940.48 per year

He, therefore, has left to his own use $8,711.51 ($15,652 minus $6,940.48) or $167.53 per week. Mrs. Lovejoy and the three children receive $133.47 per week from him under the court order. The difference between that

amount and their actual needs will have to be made up by Mrs. Lovejoy's employment. Mr. Lovejoy's expenses will increase when the balloon payment on the house contract comes due, if he should have to refinance. However, by that time the house should be sold, and he should have received half of the proceeds of the sale, or $15,000 based on his own evaluation of the worth of the house. Also, on September 30, 1980, the current $100 per month house payments will terminate.

Mr. Lovejoy argues that his net income reaches $301 per week only because of the part-time job he holds in addition to his regular job. He contends that he should not be forced to work 60 or more hours per week just to support his former wife. We see no evidence that he is forced to work these long hours in order to pay maintenance to his ex-wife. He has worked two jobs for at least the past six years. The court did not err in taking into consideration his actual past income. The record shows that the financial resources available to Charles Lovejoy are capable of supporting the maintenance awarded to his former wife and his three daughters, as well as maintaining his own sustenance. While the new Marriage and Dissolution of Marriage Act has more precisely focused the considerations which must be addressed before maintenance and child support will appropriately be awarded, the rule of law governing such decisions is one which places discretion, within statutory limits, with the trial court. Thus, the necessity for and the amount of an award, both as to maintenance and child support, are decisions within the sound discretion of the trial court in each individual case, and those decisions will not be set aside unless found to be contrary to the manifest weight of the evidence, thus showing an abuse of discretion. (*In re Marriage of Reyna* (1979), 78 Ill. App. 3d 1010, 1014-15, 398 N.E.2d 641.) The judgment of the trial court in this case was not contrary to the manifest weight of the evidence, and we find no abuse of discretion in the amount of maintenance awarded by the circuit court. Should the financial circumstances of either party change substantially, Mr. Lovejoy would be free to seek modification of the award. Ill. Rev. Stat. 1977, ch. 40, par. 510(a).

For the reasons stated, the judgment of the Circuit Court of Henry County is hereby affirmed.

Affirmed.

STOUDER and BARRY, JJ., concur.