*In re* MARRIAGE OF SUSAN S. SMITH, Petitioner-Appellee, and DONALD A. SMITH, Respondent-Appellant.

First District (5th Division) Nos. 84—0355, 84—1192 cons.

Opinion filed April 19, 1985.

Arthur Solomon, of Solomon & Behrendt, of Chicago, for appellant.

David B. Carlson, of Rinella & Rinella, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

This is an appeal from several portions of a judgment for dissolution of marriage brought by respondent, Donald Smith. Respondent contends that the trial court erred in: (1) reserving maintenance for the petitioner, Susan Smith; (2) granting permanent custody of the Smith children to the petitioner; (3) failing to consider both the needs of the children and the petitioner's income when making the child support award; (4) failing to distribute the marital property in just proportions; (5) awarding attorney fees and costs to the petitioner and her attorneys and awarding them in an excessive amount; and (6) denying respondent's request to examine opposing counsel's original time sheets. We affirm in part and reverse in part.

The Smiths were married on July 12, 1969. Two daughters were born to the parties: Lindsay on June 25, 1976, and Courtney on October 14, 1979. In May 1981, the parties separated and the respondent moved into his own apartment.

Petitioner worked as an elementary school teacher from 1969 to 1976. She returned to the teaching profession in 1983, earning an annual salary of $20,258. Respondent is employed by the V. A. Smith Company (V. A. Smith), a business owned by his father. Respondent, his father and George Olsen are the directors of the company. The directors vote on the payment of salaries, bonuses and loans. In 1980, respondent earned $88,000, including a bonus. His income for 1981 was $58,600, which also included a bonus. In 1982, respondent was not paid a bonus and earned only $28,600. The decline in his salary was due to two factors: a decrease in the company's profitability and a reduction in respondent's sales volume. In addition to his salary, the company paid for respondent's use of two company cars, his business expenses and medical insurance. Some of the company's customers gave him free vacation trips.

Respondent received several loans from V. A. Smith totaling $58,000. The principal on these loans has not been repaid. The money borrowed was used to make several real estate investments, which

proved unprofitable, and for the payment of legal expenses for this lawsuit. The respondent is indebted in the amount of $5,475 to the First National Bank of Skokie and is a guarantor of his $3,700 share of a loan assumed by the buyer of property which he owned in part. Petitioner borrowed $7,480 from her parents to cover court costs and living expenses prior to resuming a teaching position.

During their marriage, the parties acquired a home valued at $170,967 with an outstanding mortgage of $27,184, furnishings in the marital home valued by the respondent at $32,895, a sailboat worth $9,000, a powerboat worth $750 and a snowmobile worth about $250.

At trial, Virginia Simons, a clinical social worker, and Dr. Peter Fink, a psychiatrist, testified on the issue of child custody. Simons interviewed both the parties and the children. She also spoke with the children's teachers, petitioner's minister and her therapist. Simons concluded that the petitioner should be given custody of the children. She based this conclusion on their attachment to the petitioner, petitioner's affection for and nurturance of them and her care of them since their birth. On cross-examination, Simons stated that respondent's interactions with the children were structured and that, although she detected love and affection between them, it was not of a physical nature, such as hugs and pats.

With Simons in attendance, Dr. Fink later interviewed the parties and the children. After the interviews, it was his and Simons' opinion that the petitioner should have custody and the respondent should have liberal visitation. Fink stated that the petitioner could provide consistency, structure and reliability for the children. She demonstrated a capacity to tolerate both negative and positive emotional experiences with her children in an effective and adaptive manner. He testified that respondent was a concerned and loving parent but did not have a sufficient quality and quantity of the characteristics which the petitioner possessed.

Dr. Jack Arbit, a clinical psychologist, testified on respondent's behalf. He examined the respondent, concluding that he is a suitable full-time parent. Lindsay and Courtney were interviewed. Lindsay's physical, psychological and intellectual development were within the normal range. He found Courtney to be a healthy child with no psychological abnormalities. He stated that the current visitation with the respondent, every other weekend and evening a week, was inadequate. On cross-examination, Dr. Arbit indicated that he did not interview the petitioner. He recommended joint custody, with the children spending equal time with each parent.

A neighbor, Julie Stoops, testified that the petitioner did not get

along with her children and that she did not play with them. When the petitioner was away, she would leave the children with three or four pre-teenage babysitters in one day. Petitioner told her of calling the Abused Children Hotline because she had difficulty controlling her temper. Petitioner also told her about meeting and having sexual relations with men she met on Rush Street. In her opinion, the petitioner is one of the most insensitive mothers she knows. During cross-examination, Stoops indicated she has not kept in touch with the petitioner since Stoops moved out of the neighborhood in 1982.

Heather Campbell, a neighbor, testified that she has known the Smith family for 6½ years. She stated that she sees the petitioner four times a week, that the petitioner keeps a neat home, that the Smith children are normal and healthy, and that the petitioner is an excellent mother. Petitioner babysits for the witness' children and she trusts her to take good care of them.

Jean Garschagen and Sheila Mitchell, neighbors of the Smiths, gave testimony similar to Campbell's. Garschagen also testified that she knows Julie Stoops. The petitioner and Stoops were friends until they had a disagreement over which Stoops became upset and violent. Stoops was opinionated and was often out in the street loudly voicing her opinions. Stoops' opinions were always negative, and she criticized everyone in the neighborhood behind their backs. Mitchell stated that she is acquainted with Julie Stoops. Stoops consistently complained and was dissatisfied with every aspect of life in the neighborhood.

Respondent's mother, Ruth Smith, testified that her son's family visited her home four to six times a month. Since the separation, respondent brings the children over for dinner on Friday nights. During these visits, she has observed respondent playing games, reading stories and taking walks with the children. She thought that the petitioner did not properly discipline the children. Although she felt respondent was capable of taking care of the children, she concluded that she was not better able than the experts to decide where to place the children.

Respondent's sister, Susan Sprowl, testified that she visited her brother's family for a month every summer and sometimes at Christmas. Respondent was affectionate with the children and was concerned with teaching them good grooming habits and manners. She stated that he could take care of the children on a full-time basis.

Karen McArthur, a long-time friend of respondent's, testified that she visited the Smiths for a few hours every other month. Respondent was close to Lindsay. After the Smith's separation, respondent and

the children visited the witness about once a month. He played with and cared for the children. She stated that respondent is a caring, concerned and competent parent. She testified on cross-examination that she had not been in the Smith home for three or four years and could not testify about the home as it is today.

Respondent testified that he and Lindsay are very close. He assisted in caring for both children by feeding, bathing and playing with them. He taught them proper table manners and how to get along with other children. Petitioner generally disciplined the children. On several evenings after the separation, respondent drove by the marital home. As he drove by, he noticed a car belonging to petitioner's male friend, Richard Cook, in the driveway. The only lights on in the house were in the master bedroom. Respondent testified that he has had a female friend since before he and the petitioner separated. If granted custody and the children were to take sick, respondent could stay home with them or his mother, who lives nearby, could care for them.

Petitioner stated that she cared for the children when they were very young. As they grew, she continued to care for them. If the children become ill, she could leave work to care for them. She testified that Cook had never spent the night at her home.

The court interviewed Lindsay Smith *in camera*. She stated that Richard Cook had never spent the night at their home. She told the court that the petitioner told her that respondent lied when he testified that petitioner has several boyfriends and that Cook spends the night at their home. Lindsay stated that petitioner has only one boyfriend.

A court order of September 17, 1981, required the respondent to pay the petitioner $500 per month unallocated support and maintenance plus the mortgage on the marital home, real estate taxes on the home, utility bills, pharmacy charges, automobile expenses and the children's medical bills. On October 4, 1982, this order was modified, relieving respondent of the mortgage and real estate tax payments.

The judgment of dissolution was entered on January 24, 1984. Custody of the children was granted to the petitioner. The respondent was given liberal visitation rights. He was ordered to pay child support of $600 per month per child. Petitioner was awarded the marital home and its furnishings. All title and interest in the real estate investments was granted to respondent plus the sailboat, powerboat and snowmobile. The court reserved the issue of maintenance for the petitioner and the question of attorney fees was reserved for a later hearing on proper notice and petition.

On February 23, 1984, petitioner's attorneys filed a supplemental petition asking that respondent be ordered to pay them $830 in costs and $25,666 in fees. Petitioner's attorneys also filed a petition for court costs, seeking $950 plus interest. Petitioner's attorneys based their fee petition on a list summarizing their services which was attached to the petition. Respondent's attorneys requested the production of the original time sheets. After an *in camera* inspection of these time sheets, the trial court ruled that production of these sheets was improper because they were work product. During his testimony, one of petitioner's attorneys referred to the original time sheets to refresh his memory. After the hearing, the court ordered the respondent to pay petitioner's attorneys $22,013 in fees and to pay the petitioner $950 in costs. Respondent appeals.

OPINION

■ The first issue presented is whether reservation of maintenance for the petitioner was error. Respondent maintains that the petitioner is employed and able to support herself. The propriety of an award of maintenance is within the sound discretion of the trial court. (*In re Marriage of Lovejoy* (1980), 84 Ill. App. 3d 53, 59, 404 N.E.2d 1092.) Its decision will not be set aside unless it is contrary to the manifest weight of the evidence and, therefore, an abuse of discretion. 84 Ill. App. 3d 53, 59, 404 N.E.2d 1092.

■ The case of *In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748, presented a situation similar to the one presented in the instant case. In *McNeeley*, the wife, who had been away from the labor force for a substantial period of time, sought an award of maintenance. The court held that under these circumstances it was an abuse of discretion to award the wife maintenance. (117 Ill. App. 3d 320, 329, 453 N.E.2d 748.) In so ruling, the court reasoned that it would have been more appropriate for the trial court to reserve the maintenance award for review after a certain time period, giving the wife an opportunity to seek appropriate employment. Similarly in this case, petitioner had not worked for a period of seven years. Although petitioner had recently secured a teaching position, the trial court decided to reserve maintenance to allow her time to begin working and to become self-supporting after her long absence from the teaching profession. Based on these facts, we find no error in the trial court's reservation of maintenance.

■ Our decision is further supported by *In re Marriage of Cohn* (1982), 93 Ill. 2d 190, 443 N.E.2d 541. In *Cohn*, our supreme court held that there must be appropriate circumstances for entering a

judgment of dissolution of marriage while reserving the question of maintenance. One such instance is where a party is unable to pay maintenance if so ordered. (93 Ill. 2d 190, 199, 443 N.E.2d 541.) The facts in this case indicate that respondent's salary has steadily decreased over the last few years and that he is paying a high percentage of his salary for child support. With his present salary, he would be unable to pay more of his income to the petitioner and meet his own needs. We therefore find that the reservation of maintenance was not an abuse of discretion.

■ The second issue raised is whether the trial court's grant of permanent custody of the children to the petitioner was an abuse of discretion. Respondent maintains that he is the better parent because he has more time to spend with the children and is able to better care for them. Respondent contends that Richard Cook's presence in petitioner's home several evenings and the testimony of Julie Stoops concerning petitioner's encounters with men on Rush Street are evidence of her low moral standards which would be harmful to the children.

Respondent argues that *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421, *cert. denied* (1980), 449 U.S. 927, 66 L. Ed. 2d 155, 101 S. Ct. 329, controls. The *Jarrett* court held that a custodial parent's cohabitation with a member of the opposite sex offends public policy and endangers children's moral development. (78 Ill. 2d 337, 346-49, 400 N.E.2d 421.) Later case law clarifying *Jarrett* held that there is no presumption that a child is harmed by a custodial parent's cohabitation. (*In re Marriage of Thompson* (1983), 96 Ill. 2d 67, 78, 449 N.E.2d 88, *cert. denied* (1983), 464 U.S. 895, 78 L. Ed. 2d 232, 104 S. Ct., 242.) Rather, it is one of many factors to be considered in determining the best interests of the child. 96 Ill. 2d 67, 78, 449 N.E.2d 88.

Under the facts of this case, *Jarrett* is inapplicable. In *Jarrett*, the wife's male friend had moved into her home but the couple had no plans to marry. Mrs. Jarrett spoke openly about this living arrangement with both her former husband and her neighbors. No such cohabitation, much less the open and notorious cohabitation found in *Jarrett*, exists in the instant case. The respondent testified that he saw Cook's car in the driveway several evenings and saw lights on in the master bedroom. Petitioner denied that Cook ever spent the night at her home. We are of the opinion that the evidence respondent presented does not support his argument that petitioner and Cook were cohabiting. We are likewise not persuaded that Julie Stoops' testimony regarding petitioner's encounters with men on Rush Street provided sufficient evidence that her moral standards are low. Julie

Stoops' testimony was discredited by the testimony of Jean Garschagen and Sheila Mitchell. They stated that Stoops is a negative, critical, dissatisfied person. The friendship between Stoops and petitioner ended over a disagreement which caused Stoops to become upset and violent. After hearing evidence for both parties, the trial court found that the petitioner was "capable of parenting alone" and had done "an exemplary job of raising the children." The determination of child custody rests within the broad discretion of the trial court, and its decision will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence. (*In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 715, 463 N.E.2d 773.) After a careful review of the record, we do not think that the trial court's decision was against the manifest weight of the evidence.

■■ ■ Respondent's third contention is that the award of $600 per month per child is excessive and that the trial court abused its discretion in failing to consider both the needs of the children and the petitioner's income. He argues that the financial resources of both parents must be considered, that the petitioner earns $20,258 per year, and that the trial court failed to consider her income. Respondent also maintains that $1,200 per month is excessive because only $285 of the $1,729 petitioner claims as monthly expenses for herself and the children is attributable to the children's expenses.

Respondent argues that the trial court failed to consider petitioner's income. It is well settled that on appeal, all reasonable presumptions are in favor of the action of the trial court, and the burden is on the appellant to show affirmatively the errors assigned on review. (*In re Estate of Elson* (1983), 120 Ill. App. 3d 649, 656-57, 458 N.E.2d 637.) The record discloses that both parties are employed and indicates the annual income of each of the parties. There is no affirmative evidence in the record that the trial court failed to consider petitioner's income when considering the child support award. In making its determination, however, the court focused chiefly on respondent's lifestyle, which gave the court the "impression that he is a man of means and a devoted father who wants to properly provide for his children." No finding was made as to the amount of his income. Respondent testified that he earns $28,600 per year and that he received loans in the amount of $58,000 from V. A. Smith. He stated that his salary decreased over the last few years because his sales volume was down, as well as the company's profitability. Although the evidence indicates that respondent's income is greater than petitioner's, we agree that he should not be required to pay nearly 70% of the total family expenses when the petitioner is able to contribute toward the children's

expenses. The trial court abused its discretion by basing the award on the assumption, unsupported by the evidence, that respondent earned more than $28,600 and by requiring respondent to pay a disproportionate portion of the children's expenses. The issue of child support must be remanded for redetermination.

■■ ■ The fourth issue respondent raises is whether the marital property distribution was in just proportions. Respondent argues that the trial court awarded most of the marital debts to him and most of the marital assets to the petitioner. Petitioner contends that it was a fair disposition considering the duration of the marriage, petitioner's contributions as a wife and mother and her lower income capacity.

Section 503(d)(7) of the Illinois Marriage and Dissolution of Marriage Act provides:

"In a proceeding for dissolution of marriage *** the court shall assign each spouse's nonmarital property to that spouse. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including: *** (7) the age, health, station, occupation, *amount and sources of income,* ***, and needs *of each of the parties*; ***." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 40, par. 503(d)(7).

Absent an abuse of discretion, the trial court has a great amount of discretion in allocating marital property between the parties. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126.) The property distribution was based on the court's subjective impression that the respondent was earning more than $28,600. The respondent presented evidence on the amount of his income. He testified that the decrease in his salary was due to the company's lower profits and to a decline in his sales volume. Petitioner did not refute this evidence. Respondent also presented evidence that he did obtain $58,000 worth of loans from V. A. Smith which he will have to repay. This evidence was not controverted by petitioner. The evidence, therefore, does not support the conclusion that the loans to the respondent are income. Again the trial court made the property distribution assuming that the respondent earns more than $28,600, which is unsupported by the evidence. Accordingly, we find that the distribution of marital property was against the manifest weight of the evidence and should be redetermined upon remand.

■■ ■ Respondent's fifth contention is that the trial court erred in awarding costs and attorney fees and that the amount awarded is excessive. The general rule in dissolution cases is that to justify allowance of attorney fees the party seeking the relief must show financial

inability to pay and the ability of the other spouse to do so. (*In re Marriage of Uphoff* (1980), 80 Ill. App. 3d 145, 147-48, 398 N.E.2d 1243.) Because the ability of either spouse in this context is based largely upon the distribution of the parties' assets and the property issue must be remanded, we are unable to determine that the relative financial abilities of the parties have been adequately considered by the trial court. Upon remand, the trial court should be guided by the general standard that any allowance should be only in such amount as will compensate for the services rendered, and must be fair and just to all parties concerned, namely the attorney to be compensated, the client, and the person required to make payment. See *In re Marriage of Cuisance* (1983), 115 Ill. App. 3d 551, 450 N.E.2d 1302; see also *Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661.

 █ Concerning the sixth issue raised, respondent argues that because the petitioner's attorney used the original time sheets at trial to refresh his recollection, his attorney should have been allowed access to those time sheets. During the hearing, the trial court inspected the original time sheets *in camera,* comparing the hours on those sheets with the hours listed on the sheets attached to the fee petition. The court's basis for later denying respondent's request to see the original time sheets is that the documents are work product and, therefore, privileged material. Documents used to refresh a witness' recollection must be furnished to opposing counsel on demand. (*People v. Olson* (1978), 59 Ill. App. 3d 643, 647, 375 N.E.2d 533; see also *People v. Scott* (1963), 29 Ill. 2d 97, 193 N.E.2d 814.) The appellant, however, has the burden of presenting a sufficiently complete record of the earlier proceedings to support a claim of error, and any doubts occasioned by the incompleteness of the record are resolved against the appellant. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92, 459 N.E.2d 958.) Because the court reviewed and compared the time sheets and because the record does not contain the original time sheets, we cannot say the trial court erred in holding that the time sheets were work product.

The order of the circuit court reserving maintenance and granting custody to the petitioner is affirmed. Those portions of the order awarding child support, distributing the marital property and awarding attorney fees are reversed and remanded for proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded, with directions.

SULLIVAN and LORENZ, JJ., concur.