*In re* CUSTODY OF STEPHANIE MELEAR.—(JAMES DAVID MELEAR, Petitioner-Appellee, *v.* BILLIE J. MELEAR, Respondent-Appellant.)

Third District   No. 79-251

Opinion filed September 28, 1979.

Sidney S. Deutsch, of Rock Island, for appellant.

Herbert F. Schultz, of Rock Island, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

The parties to this cause filed separate petitions for the dissolution of their marriage, and at the conclusion of the consolidated hearing, the trial court found in favor of James David Melear, and, *inter alia*, awarded him permanent custody of the couple's one-year-old daughter, Stephanie, subject to certain rights of visitation in Billie J. Melear. In bringing this appeal, the mother questions only the propriety of the custody award.

According to the testimony in the record, during a period when the father was temporarily unemployed, the mother obtained work at Sambo's Restaurant to support the family. She developed a romantic relationship with her employer which led to the breakup of her marriage. She testified that she planned to remarry after the divorce, and that she would then no longer have to work and would be able to devote her time entirely to the care of Stephanie, who would have her own bedroom in their six-room apartment. However, at the time of the hearing, the mother was not working and was residing with her mother.

On the other hand, the father, who was financially able to support the child, had rented a six-room house with his divorced sister. Stephanie slept in a crib in her father's room, and was cared for by his sister during the day until 3 p.m. when she left for work. At that time Stephanie was taken to the home of her paternal grandmother where she remained until her father picked her up about 5:20 p.m. This arrangement was expected to continue following the divorce.

As for the care of the child, when she developed a cold shortly before the time of the hearing she was cared for by her paternal grandmother so that she need not be shifted between houses during the day. In addition, Stephanie was taken to a doctor although not her regular pediatrician. The father admitted that he did not know how many innoculations the child yet needed because the mother usually took Stephanie to the doctor in the past.

During the marriage, both parents tended to the needs of the child. When the mother went to work, the paternal grandmother cared for the child, and the father's cousin was also available for babysitting.

While the mother testified that, prior to the separation, no one ever complained of her care of the child, the paternal grandmother testified to the contrary, saying that even in cold weather, the mother would bring the child to her house dressed in only a gown, wrapped in a thin blanket, and with bare feet. In addition, the father testified that he observed the mother spank Stephanie because the child was crying when the mother wanted to go to sleep. This was corroborated by the testimony of the cousin who, while babysitting, saw the mother twice spank the child because Stephanie was crying due to teething pain and the mother, upon coming home from work, was tired and wanted to go to sleep. However, the babysitter observed no marks on the child. The mother denied spanking Stephanie and countered that the father once left a hand mark on the child, which incident the father testified he did not recall.

The mother admitted that after she left the marital home, it was three days before she asked to see the child. Then, after she came by to see Stephanie, it was another three or four days before she telephoned to see how the child was doing. Once the dissolution proceedings were instituted, however, and the parties agreed to visitation rights during the pendency of the suit, she availed herself of every opportunity to be with her child.

After the hearing the trial court prepared and filed a memorandum of its decision which included the following paragraph:

"Custody of the minor daughter is awarded to [the father]. The court is of the opinion that even though the child is of tender years, [the father] can provide the stable environment necessary for the child. His family appears to be very supportive, and there has been

nothing to show that the child's environment would be a negative one. On the other hand, the evidence shows little potential stability for the child in [the mother's] current situation. At this point, her plans for the future are tentative. Even if her marriage plans are completed, the Court sees no reason to upset the child's current stable home with her father by placing her in new surroundings requiring new adjustments."

The judgment order which was subsequently entered included no findings of fact pertaining to custody or to the fitness of the parents but merely gave custody to the father. The mother has perfected this appeal from that portion of the judgment which placed custody with the father. The father has filed no appearance or brief in this appeal, and according to a letter appearing in the record which he sent to the circuit court, he moved to Mississippi with Stephanie about three weeks after the order was entered.

The mother contends that the trial court erred by failing to include in the judgment specific findings concerning the factors to be considered when awarding child custody under the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1977, ch. 40, par. 602.) She relies upon *Wurm v. Wurm* (1979), 68 Ill. App. 3d 168, 385 N.E.2d 894, where we held that the judgment could not be affirmed as consistent with the best interest of the children when the judgment order was silent as to the factors which the court was required to consider under the 1977 statute. We remanded the cause to the trial court with directions to reconsider its decision in light of the new statute, and in doing so we relied upon the appellate court decision in *West v. West* (1978), 62 Ill. App. 3d 963, 379 N.E.2d 930, which has since been reversed by the supreme court. (*West v. West* (1979), 76 Ill. 2d 226, 390 N.E.2d 880.) In *Wurm*, it was obvious from the record, as well as from the judgment, that the trial court totally failed to consider the relevant factors as required by the new marriage act. Such was not the case in the instant proceeding where the trial court heard considerable evidence relating to the factors listed in section 602, including the wishes of the parents, the interrelationship of the child with her parents and others who may significantly affect her best interest, her adjustment to her home, the mental and physical health of all persons involved, and the stability of the environment available to her.

■■ We do not read either *Wurm* or the new marriage act as mandating a recital of the specified factors in the judgment order or as requiring written findings of fact in any other form. (*De Franco v. De Franco* (1978), 67 Ill. App. 3d 760, 384 N.E.2d 997; *Drury v. Drury* (1978), 65 Ill. App. 3d 290, 382 N.E.2d 608.) What section 602 of the Act clearly *does* require is some indication in the record that the trial court considered the

factors listed. Since the record before us is adequate for purposes of section 602, we decline to disturb the judgment merely because written findings of facts were not made in statutory form.

The mother also contends that the trial court failed to give full weight to "the tender years doctrine" which recognizes that where all things are equal, the best interest of a young child of tender years requires the care and custody of the mother. (*E.g., Nye v. Nye* (1952), 411 Ill. 408, 105 N.E.2d 300.) This doctrine is no longer universally accepted (*e.g., Jines v. Jines* (1978), 63 Ill. App. 3d 564, 380 N.E.2d 440), but even if it were invoked in this case, the result here would not be changed. The trial court specifically mentioned the tender years of the child in its memorandum which indicates that the fact of the child's infancy was considered. Moreover, all things are not equal between the father and mother, according to the record, and we can see no justification for reversing the judgment of the trial court.

The mother also says that we should deprive the father of custody because he has moved to Mississippi with the child since the hearing. Although a letter from the father in Mississippi has been placed in the record, we believe that any modification of the custody order because of changes in circumstances arising since the hearing should be initiated in the trial court pursuant to section 610 of the Act. Ill. Rev. Stat. 1977, ch. 40, par. 610.

■■ After reviewing the record, we conclude that the evidence is sufficient to support the decision of the trial court that it is in the best interest of the child to leave custody with the father. Accordingly, we affirm the judgment of the Circuit Court of Rock Island County.

Affirmed.

ALLOY and BARRY, JJ., concur.