*In re* CUSTODY OF JOHN ALLEN.—(KAREN LUCILLE ALLEN, Petitioner-Appellee, *v.* GREGG ALLEN, Respondent-Appellant.)

Third District   No. 79-352

Opinion filed February 28, 1980.

Dennis A. DePorter, of Braud, Warner, Neppl & Westensee, Ltd., of Rock Island, for appellant.

John R. McClean, Jr., of Klockau, McCarthy, Lousberg, Ellison & Rinden, of Rock Island, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Appellant, Gregg Allen, respondent to a petition for dissolution of marriage, appeals from the judgment of the Circuit Court of Rock Island County awarding custody of his son to his wife, Karen.

On August 31, 1978, Karen Allen filed a petition for dissolution of her marriage to Gregg Allen. On September 21, 1978, Gregg Allen filed a counterpetition for dissolution. On the same day, temporary custody of the couple's minor children, John, then age 10, and Wende, age 7, was awarded to Mrs. Allen. A hearing was held on grounds for dissolution on

January 29, 1979, and grounds of mental cruelty were found to exist. On February 22, 1979, an order dissolving the marriage was entered by the court. On March 15, 1979, the second part of the bifurcated hearing was held on the issues of property disposition, child custody, support, and visitation. The court awarded the custody of both children to Karen Allen. Neither the property settlement nor the granting of custody to Mrs. Allen of the daughter, Wende, is being appealed here. The appellant's sole contention is that the court erred in granting custody of the boy, John, to the child's mother rather than to him.

The children and their mother now reside in Milan, Illinois. Both children attend a school five blocks from their home, which they are able to get to and from by themselves. Mrs. Allen works two days a week. Mr. Allen is employed as an intercity truck driver by a Chicago firm. He works from 11 p.m. to 7 a.m. He told the court that he intends, if given custody of his son, to move to Moline. There he and his son would reside with his parents in their three-bedroom mobile home. He indicated that his job would allow him to be home in the morning and when the child goes to bed. Apparently, Mr. Allen intends to keep the same job after moving 45 miles away from his present residence. He expressed a willingness to find a new job, although he has not yet sought one. The boy, John, testified that it was his understanding that he was to live with his father in Galesburg, where he would be looked after by an elderly aunt while his father was away at work. The paternal grandfather testified that it was his understanding that he and his wife would care for John in their home in Moline while Gregg Allen was out of the house, as it was Gregg's intention to move into their home.

Karen Allen acknowledges that the boy is having some minor emotional problems. He is performing poorly in school, although his scholastic performance has always been somewhat poor. He is unruly at times and difficult to discipline. Occasionally, she slaps him. John testified that he has difficulty concentrating in school and that his mother slaps him when he provokes her. The evidence indicates that John's scholastic problems began when his parents separated. His behavioral problems seem at their worst just after he returns from a trip to see his father. John testified that he did not love his mother as much as he used to, although he still loves his sister. John also indicated that he was upset with his mother for leaving him with a babysitter "once or twice a week" when she goes out at night. John testified that his mother takes care of him, fixes his food and his clothing. There was uncontradicted evidence that John and his father get along well. John's preference was to live with his father.

At the close of the evidence, the court stated:

"[T]his is an extremely difficult thing to do as I am sure everyone realizes. There is no doubt in the Court's mind [that] Mr. Allen

loves his son very much and I have no question in my mind [that] Mrs. Allen loves her son. The Court's concern has to be for what it believes is in the best interest of the child and at this point, the Court cannot say it feels it would be in the best interest of the child to award custody to the father. I say that for a number of reasons. According to the testimony, it was suggested that the boy would live with the paternal grandparents. I am a grandparent and I and my wife are approximately the same age as the paternal grandparents. I have grandchildren [whom] I love deeply but I recognize the problems of trying to raise a second family at that age. Perhaps I should not even mention that but I am aware of the problems that there are. This has been a traumatic experience for all the parties and it is especially a traumatic experience for John, Jr. here, but I am going to award custody of John, Jr. and his sister Wende to the petitioner, Karen Allen, because I feel that it is in his best interest and at this point, as difficult as it may be for him, in the long run I think that it will be the best thing."

Section 602 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 602) requires:

"The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:

(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community; and

(5) the mental and physical health of all individuals involved."

■■ Ample evidence was presented to the court on all of these factors. The appellant contends that the court erred in not explicating its findings as to all of these factors, citing *Wurm v. Wurm* (1979), 68 Ill. App. 3d 168, 385 N.E.2d 894. However, in *In re Custody of Melear* (1979), 76 Ill. App. 3d 706, 708, 395 N.E.2d 208, this court observed that in *Wurm* "it was obvious from the record, as well as from the judgment, that the trial court totally failed to consider the relevant factors as required by the new marriage act." As in *Melear*, such was not the case in the instant proceedings. Here the trial court heard considerable evidence relating to the factors listed in section 602, including the wishes of the parents, the wishes of the child, the interrelationship of the child with his parents, his sister, and others who may significantly affect his best interest, his adjustment to his home, school and community, the mental and physical

health of all persons involved, and the stability of the environments available to him. The new marriage act does not mandate a recital of the specified factors in the judgment order or require written findings in any other form. "What section 602 of the Act clearly *does* require is some indication in the record that the trial court considered the factors listed." (76 Ill. App. 3d 706, 708-09.) Since the record before us is adequate for purposes of section 602, we decline to disturb the judgment merely because written findings of fact were not made in a form listing statutory guidelines. *In re Custody of Melear* (1979), 76 Ill. App. 3d 706, 395 N.E.2d 208.

■■ The appellant further contends that the judgment of the court, awarding custody of John to Mrs. Allen, was contrary to the manifest weight of the evidence and palpably erroneous. The testimony indicates that John was having difficulty concentrating on his studies, that he was sometimes unruly at home, that he did not love his mother as much as he had in the past, and that he preferred to live with his father. The appellant contends that the presence of these phenomena indicates a disturbed home environment which should be changed by awarding custody of the child to him. We believe it is more likely that these phenomena may have their source in the custody battle itself. We agree with appellant that weight should be given to a child's preference as to his custodian. (See Ill. Rev. Stat. 1977, ch. 40, par. 602(a)(2).) Such a preference, however, may not always accord with the child's best interest. Frequently, a child will favor a noncustodial parent, whom he sees only on weekends, to his custodial parent, who is responsible for his day-to-day schooling and discipline, irrespective of the quality of care he receives at home.

The fact that young John's discipline problems were most acute just after his return home from visitation with his father is evidence that such may be the case here. John's relative coldness toward his mother since the marital breakup, as well as his resentment of her moderate social life, indicate that the major source of the child's problems may be his parents' marital breakup itself, rather than any serious inadequacy on his mother's part. The effort required for good school work and obedient behavior at home is a rather taxing one for many 10- or 11-year-old boys. The evidence indicates that Mr. Allen promised young John he would soon be taken away from his present environment. We can only conclude that such promise of escape exacerbated John's concentration and discipline problems. The trial judge apparently concluded, based upon the evidence, that these behavior problems would abate once John settled down into a stable routine to which the boy would adapt himself. The court saw more stability in the mother's home. It is clear that Mr. Allen could not care for the boy without help. It was unclear, at least to the child, whether such help would be provided by Mr. Allen's aged aunt or

his elderly parents. The trial judge, who observed the principals and heard the evidence, concluded that such care would be less to John's best interest than that which was being provided by his mother. We cannot say that such a conclusion was palpably erroneous or contrary to the manifest weight of the evidence.

For the reasons stated, therefore, the judgment of the Circuit Court of Rock Island County is affirmed.

Affirmed.

STOUDER and BARRY, JJ., concur.