*In re* MARRIAGE OF LUCILLE M. McCUNE, Petitioner-Appellee and Appellant, and MILO J. McCUNE, Respondent-Appellant and Appellee.

Third District   No. 79-778

Opinion filed July 17, 1980.

312

Dorothea O'Dean and Stewart R. Winstein, both of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellant.

Matthew A. Maloney, of Pierson & Maloney, of Princeton, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by both parties from orders of the trial court in a dissolution of marriage proceeding.

The marriage of the parties was dissolved on April 13, 1978. On June 6, 1979, after six separate hearings, the court issued an order distributing the property of the parties and granting custody of their two sons to Mr. Milo McCune. Both parties appeal from the judgment.

The order of June 6, 1979, awarded Mr. McCune some stock, which the court found to be his separate property. Mrs. McCune was found to own no separate property. The rest of the parties' property was deemed marital property. The items in contention were distributed as follows: Mrs. McCune was awarded a 160-acre farm valued at $424,000. This farm had been held in joint tenancy by the parties. Mr. McCune was awarded a 500-acre farm, which had been the family residence. Title to it was in a land trust for the sole benefit of Mr. McCune. The farm was valued at $975,000. In addition, Mr. McCune was awarded grain, farm machinery, and livestock valued at $387,300 and some corporate stock valued at $1,300. The farm and associated personal property were subject to encumbrances of $379,000. Therefore, the net value of Mr. McCune's share in the marital property was $984,600. Mr. McCune was ordered to pay a $30,000 mortgage debt on the 160-acre farm awarded to Mrs. McCune. He was ordered to pay his former wife's attorneys' fees of $15,000. In addition, he was ordered to pay Mrs. McCune $100 per week

maintenance for two years. The court characterized the transfer of the jointly held farm to Mrs. McCune's sole ownership as a taxable event, and ordered Mr. McCune to pay any income tax liability that might result. Mr. McCune was awarded custody of the couple's two sons, James, age 15, and Harry, age 13.

Mr. McCune appeals (1) the award of maintenance, (2) the order that he pay the outstanding balance of $30,000 on the mortgage encumbering the 160-acre farm awarded Mrs. McCune, and (3) the order that he pay his former wife's attorneys' fees. In addition, he asks this court to strike, from the order, a finding by the trial court that "[t]he awarding of the one hundred and sixty (160) acre farm to Lucille McCune is a taxable event and the evidence together with schedules admitted into evidence shows a substantial tax liability upon Milo McCune based on the appreciation in value of the farm land," and to substitute in lieu thereof "that said award is a division of jointly acquired property in a fair and equitable manner, between common owners, under the evidence, as a result of their joint efforts."

■■ The McCunes had been married for 15 years. Mrs. McCune is 51 years old. She has completed two years of high school. She has worked part-time as a beautician out of a shop in the marital home, and earned a maximum of $15 per week at this trade. The court, in awarding maintenance, found that Mrs. McCune "lacks sufficient property, including marital property to be apportioned to her, to provide for her reasonable needs, and is unable to support herself through appropriate employment, and is otherwise without sufficient income, and after considering all relevant facts, [the court] finds a maintenance award appropriate." (See Ill. Rev. Stat. 1979, ch. 40, par. 504(a).) "The awarding of [maintenance] is a matter within the sound discretion of the trial court and will not be disturbed unless it amounts to an abuse of discretion or is against the manifest weight of the evidence." (*Schuppe v. Schuppe* (1979), 69 Ill. App. 3d 200, 203, 387 N.E.2d 346.) The court's finding is consistent with the weight of the evidence. The award of maintenance in this case is temporary, to last only two years. It is clear that Mrs. McCune possesses only limited marketable skills. She surely cannot live on a $15 per week income from setting hair. Even this meager income is currently unavailable to her, as her "shop," the marital home, was awarded to her ex-husband. She will have to provide herself with another dwelling.

■■ During the couple's separation, but prior to their divorce, she purchased a house in the town of Mineral. This property was awarded to her. It is, however, subject to a mortgage for which she is liable. Therefore, she will still have to bear the expense of her housing. She also needs cash for the other necessities of life. Mr. McCune argues that the 160-acre farm awarded to Mrs. McCune has a net rental value of $85 per

acre, or $13,600 per year. However, this figure is somewhat speculative, as the farm was not rented for cash, but has been farmed by Mr. McCune. The court did not abuse its discretion in guaranteeing for Mrs. McCune an income of $100 per week for a limited period, during which time the income-producing potential of her marital property award might be fully realized.

■■■ Similarly, Mrs. McCune should not be forced by necessity into an immediate disposition of the farm if its value can be more fully realized by waiting a reasonable length of time. An award of temporary maintenance is consistent with the full realization of the value of the real property awarded to Mrs. McCune. While our new Marriage and Dissolution of Marriage Act favors the termination of marital ties, such as maintenance, preferring that the parties find their fresh start through the just division of marital property (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123,1132-33, 398 N.E.2d 126), the Act does provide for maintenance in appropriate circumstances. (Ill. Rev. Stat. 1979, ch. 40, par. 504.) Here, where the former wife is without work or qualifications for work, and where the considerable property which she was awarded is nevertheless nonliquid, a temporary award of maintenance is consistent with the purposes of the Act. Such an award was neither contrary to the weight of the evidence in this case, nor was it an abuse of discretion by the trial court.

■■ Because Mr. McCune will continue to enjoy the income he derives from the operation of the 500-acre farm (plus additional acreage which he rents from his mother), while Mrs. McCune is without income, the order that Mr. McCune pay the $30,000 mortgage balance on the 160-acre farm awarded to Mrs. McCune is consistent with the weight of the evidence, and not an abuse of discretion. It is an appropriate means which the court chose to protect the value of the award to Mrs. McCune. It is consistent with the goal of avoiding a forced sale, at a depressed price, of her marital award.

■■ Similarly, the award of attorneys' fees to Mrs. McCune is consistent with the weight of the evidence and not an abuse of the court's discretion. Any spouse may be ordered to pay a reasonable amount for the costs and attorney's fees necessarily incurred by the other spouse. The court may make such order "after considering the financial resources of the parties." (Ill. Rev. Stat. 1979, ch. 40, par. 508(a).) Mr. McCune was awarded the bulk of the marital property, in the main, consisting of a working, residential farm. Mrs. McCune was awarded only nonliquid assets. Mrs. McCune is virtually without cash and is, for the immediate future, almost entirely dependent upon the maintenance award of $100 per week for her income. It would not be equitable to force her to liquidate her assets, and consequently reduce her income producing assets, in order to be able to

pay her own attorneys' fees. (*Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 600-01, 400 N.E.2d 56.) Mr. McCune does not claim he is unable to pay these fees. In fact, by the time of the filing of the briefs, he had already paid them. It was not an abuse of the court's discretion to order that the cash expense of Mrs. McCune's attorneys be paid by Mr. McCune.

■■ Mr. McCune next argues that the court abused its discretion in characterizing the transfer of the 160-acre farm from joint tenancy to sole fee ownership in Mrs. McCune as a taxable event, with such income taxes to be borne by Mr. McCune. He asks that we strike that finding and substitute a finding that the property disposition is a division of commonly owned property, acquired jointly by the parties through their joint efforts. Whether the transfer of title to property from one spouse to the other upon divorce is an exchange of property for the release of marital rights, or whether it is the division of mutually acquired assets by co-owners, is a matter of State law. (*United States v. Davis* (1962), 370 U.S. 65, 71, 8 L. Ed. 2d 335, 82 S. Ct. 1190.) No State is empowered to designate a transaction as a taxable or a nontaxable event under the Internal Revenue Code, as this power lies exclusively with the Federal Government. (*Imel v. United States* (10th Cir. 1975), 523 F.2d 853.) However, the State is empowered to designate a transaction as an exchange of property or a division of property, and such a designation may have Federal tax consequences. It is clear that the 1977 Marriage and Dissolution of Marriage Act did not turn Illinois into a community-property State. (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382.) Therefore, it was within the trial court's discretion to characterize the transfer of Mr. McCune's one-half interest in the 160-acre farm to his wife as an exchange rather than a division of property.

■■ ■ While the court's characterization of this exchange as a taxable event is clearly not binding on the IRS, the tax consequences of calling it an exchange are obvious. The tax consequences of the divorce were discussed extensively during the six days of testimony. Because the real property in question has appreciated greatly since its acquisition, a large potential tax liability exists on it. Mr. McCune estimates this tax liability to be $43,000. Because the award to Mrs. McCune is, with the exception of the $100 per week temporary maintenance, entirely nonliquid, it was not unreasonable for the court to contemplate that she might soon sell the farm. In that event, little or no money could be saved by deferring taxation on the transfer of the property. Therefore, one of the parties will be required to bear the Federal tax consequences of the property's appreciation. The court chose that party to be Mr. McCune. If the transfer to Mrs. McCune is an exchange of property, and therefore a taxable event, she will obtain a basis in the property equal to its present,

appreciated, value. She will thereby save considerable tax liability upon the sale of the property to a third party. That she should be saved this tax liability is consistent with the overall scheme of the property disposition. The court did not abuse its discretion in so ordering. While the trial court exceeded its authority in calling the transfer a "taxable event," it is clear that the court intended to characterize it as an exchange, with such tax consequences as may ensue to be borne by Mr. McCune. Because this intent is clear, we see no reason to remand for rewording of the order.

Next, we turn to Mrs. McCune's appeal. She first contends that the court abused its discretion in awarding her a disproportionately small portion of the marital property. While her husband received approximately $1 million in land, livestock, and machinery, she was awarded only a half-million dollars' worth of land. However, as we have already noted, she will receive this land at a tax basis equal to its present worth, whereas her husband will be liable for taxes on its appreciation since its acquisition. Furthermore, her husband is obligated for the outstanding $30,000 mortgage on the land. In addition, Mrs. McCune was awarded the home in Mineral which was marital property, even though she purchased it subsequent to her separation from Mr. McCune, since there had been no legal separation prior to the marriage dissolution. (Ill. Rev. Stat. 1979, ch. 40, par. 503(a)(3).) She also was awarded considerable personal property.

■■ Our Marriage and Dissolution of Marriage Act requires that marital property be "divide[d] * * * in just proportions." (Ill. Rev. Stat. 1979, ch. 40, par. 503(c).) It does not say that it shall be distributed in equal proportion. (*Schubert v. Schubert* (1978), 66 Ill. App. 3d 29, 383 N.E.2d 266.) In its order, the court specifically enumerated the factors which the statute requires it to consider. These are:

> "(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;
> (2) the value of the property set apart to each spouse;
> (3) the duration of the marriage;
> (4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;
> (5) any obligations or rights arising from a prior marriage of either party;
> (6) any antenuptial agreement of the parties;
> (7) the age, health, station, occupation, amount and sources of

income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(8) the custodial provisions for any children;

(9) whether the apportionment is in lieu of or in addition to the maintenance; and

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income." Ill. Rev. Stat. 1979, ch. 40, par. 503(c).

■■ Regarding factor (1), the court specifically considered "the contribution of Lucille McCune as homemaker and in this regard [also] consider[ed] the fact that on the date of the marriage, Milo McCune contributed approximately $80,000.00 to the marriage and Lucille McCune contributed approximately $6,000.00 and further consider[ed] contributions from the mother of Milo McCune including the use of a six hundred (600) acre farm for a nine year period." Because custody of the couple's two sons was vested in Mr. McCune, it is appropriate, as the court states in its order (factor (4)), that he be awarded the marital residence. This residence is located on the family farm. Mr. McCune derives his living from farming. He has a considerable investment in machinery, which he had employed, prior to the divorce, in farming the residential 500-acre farm, the 600-acre farm of his mother, and the 160-acre farm now awarded to Mrs. McCune. The loss of the 160-acre farm alone may result in his being overcapitalized in machinery. There is no just reason to further erode his economic position. The 500-acre farm has considerable value as a going concern, and there is no indication that Mr. McCune has any other vocational skills or inclinations. A partition of this farm might make it impossible for Mr. McCune to meet the obligations toward his ex-wife imposed upon him by the court. It might also deprive him of his livelihood, upon which the support of his children depends. The farm labor was provided, in large part, by Mr. McCune and the two boys. Mrs. McCune did little or no farm labor, but contributed to the family as mother and homemaker. Also, as the court noted in its order, Mr. McCune brought considerable capital to the marriage. The court further noted that the apportionment of marital property was in addition to maintenance. The court's disposition of the marital property was not contrary to the evidence and was not an abuse of discretion. The court order is consistent with the letter and spirit of the Marriage and Dissolution of Marriage Act.

Mrs. McCune next appeals the award of custody of the couple's two minor children to Mr. McCune. Mrs. McCune was granted reasonable visitation. The court found both Mr. and Mrs. McCune to be fit parents. The order notes that the boys, age 15 and 13, both expressed, on two

separate occasions, a strong preference to reside with their father. The order states, in part:

> "The court, after considering the provision of Part 6 of the Marriage and Dissolution of Marriage Act, determines that the best interests of the children would be served if the respondent had custody, but that the childrens' physical health and emotional development might be impaired and that the Department of Children and Family Services should exercise continuing supervision, by semi-annual visits, to assure that the ordered custody and visitation are the most beneficial arrangement for the children."

■■ Mrs. McCune argues that the ordering of "supervision of the Department of Children and Family Services" necessarily means that the judge thought Mr. McCune unfit. As the court specifically found Mr. McCune to be a fit parent and awarded him custody, in "the best interests of the children," we cannot find such an argument persuasive. Given Mr. McCune's relative inexperience in child raising, we commend the court's action in employing the expertise of the Department of Children and Family Services to ensure that the household runs smoothly in the future.

■■ Next, Mrs. McCune argues that the court did not properly consider all of the factors listed in section 602 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 602), as it is required to do, but only mentioned the preferences of the children. First, we note that the preferences of mature children should be given considerable weight, when they are based on sound reasoning. (*Rosenberger v. Rosenberger* (1974), 21 Ill. App. 3d 550, 553, 316 N.E.2d 1.) A desire to continue life in their home and on their farm, in the care of a father they find kind and fair, is reason enough. The 15-year-old's decision shoud be granted considerable weight, and there is much to commend the keeping together of siblings. *In re Marriage of Lovejoy* (1980), 84 Ill. App. 3d 53, 404 N.E.2d 1092; *Temple v. Temple* (1977), 52 Ill. App. 3d 851, 855, 368 N.E.2d 192.

■■ The court specifically recited that it had considered the mandates of part 6 of the Act. Moreover, evidence on all of the factors listed in section 602 was introduced and considered by the judge. "(1) [T]he wishes of the child's parent or parents as to his custody" were raised in the pleadings themselves. "(2) [T]he wishes of the child as to his custodian" were made clear, and commented upon in the order. (3) A finding that the children's best interests lay in their remaining together on the family farm with their father meets the requirement that the court consider "the interaction and interrelationship of the child with his parent or parents, his siblings and any other persons who may significantly affect the child's best interest."

Such a finding also satisfies the mandate that the court consider "(4) the child's adjustment to his home, school and community." Ample evidence on these issues was introduced at the hearings. "(5) [T]he mental and physical health of all individuals involved" was never disputed, and the finding that both parents are fit meets the statutory requirement on this issue. "The new Marriage Act does not mandate a recital of the specified factors in the judgment order or require written findings in any other form. 'What section 602 of the Act clearly *does* require is some indication in the record that the trial court considered the factors listed.'" (*In re Custody of Allen* (1980), 81 Ill. App. 3d 517, 520, 401 N.E.2d 608; *In re Custody of Melear* (1979), 76 Ill. App. 3d 706, 395 N.E.2d 208.) The record before us clearly shows that the requirements of section 602 have been complied with. The determination of the trial court is not contrary to the manifest weight of the evidence. The court also saw and heard the parties and the children. We find no basis for reversal.

For the reasons stated, therefore, the judgment of the Circuit Court of Bureau County is affirmed.

Affirmed.

STOUDER and SCOTT, JJ., concur.