*In re* ADOPTION OF LISA M. SCHEIDT *et al.*, Minors.—(ROBERT G. SCHOMER *et al.*, Petitioners-Appellants, *v.* LISA M. SCHEIDT *et al.*, Respondents-Appellees.)—*In re* GUARDIANSHIP OF LISA MARIE SCHEIDT *et al.*, Minors.—(CHARLES H. SCHEIDT *et al.*, Petitioners-Appellees, *v.* CURTIS LEADINGHAM *et al.*, Respondents-Appellants.)

Third District    No. 79-989

Opinion filed October 9, 1980.

William R. Penn, of Joliet, for appellants.

Thomas Cowgill, of Cirricione, Block, Krockey & Cernugel, P. C., of Joliet, for appellees.

William A. Francis, of Wilmington, guardian ad litem.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Robert and Irene Schomer appeal from a judgment of the Circuit Court of Will County denying their petition for the adoption of the minors Lisa and Andrew Scheidt and granting to Charles Scheidt, Sr., and Rose Scheidt the guardianship of the person and guardianship of the estate of Lisa and Andrew Scheidt. During the course of the proceedings, the Scheidts petitioned for adoption and the Schomers amended their petition to ask for guardianship should adoption be denied them. These petitions were denied, and the Schomers also appeal the denial of guardianship to them.

The minors, Lisa and Andrew Scheidt, are the children of Michelle Scheidt, and Lisa is the daughter of Charles Scheidt, Jr. Both Charles, Jr., and Michelle Scheidt are deceased. Michelle Leadingham Scheidt was born in August 1954 to appellant Irene Leadingham Schomer and Curtis Leadingham, who were separated in 1959 and divorced in 1961. In August 1970, Michelle married Charles Scheidt, Jr., the son of the appellees, Charles and Rose Scheidt. Lisa was born on October 7, 1970. On November 11, 1973, Charles Scheidt, Jr., died as a result of injuries received in an automobile accident. On July 5, 1975, Michelle gave birth to Andrew, whose father is unknown, but reputed to be Richard Balden-

ago. A notice of proceedings addressed to Richard Baldenago and "All Whom It May Concern" was published and neither Mr. Baldenago nor anyone else claiming to be the father of Andrew appeared. The court, in its bench order of December 12, 1979, declared that "the unfitness of the natural father of Andrew Scheidt has been found by the court and his right to parenthood has been and is now completely forfeited." No party now before this court has challenged this finding and order. Michelle Scheidt died on June 1, 1979, as a result of injuries received in an automobile accident on May 29, 1979.

Irene Schomer and her present husband, Robert Schomer, took Lisa and Andrew into their home on the day of Michelle's death. A week later, June 8, 1979, the Schomers filed a petition to adopt the children and requested the appointment of a guardian ad litem. One was appointed the same day. On June 12, 1979, Rose and Charles Scheidt, Sr., filed a petition that they be appointed guardians of the persons and of the estates of the two children, Lisa and Andrew. The two cases were consolidated on June 22. On June 27, 1979, the Schomers moved for an interim order of custody. The same date, the court issued an order granting them temporary custody of the children, without prejudice to any other party. Trial was set for July 25. On July 23, 1979, the Scheidts petitioned to adopt the children. On October 30, 1979, the Schomers amended their petition to reflect the notification by publication of the father of Andrew. On December 6, 1979, after the hearing on the consolidated cases, the Schomers further amended their petition to adopt, praying that, in the alternative, they be named guardians of the children. On the same date, the court recited its bench order and directed entry of judgment in favor of the Scheidts on their petition for guardianship of the persons and estates of the minors and dismissing all other petitions. The written order was entered on December 14, 1979, and the Schomers' notice of appeal was filed the next day. The Scheidts did not appeal the denial of their petition for adoption. The children are currently residing with the Scheidts, the Schomers' petition for a stay of judgment having been denied.

The Schomers contend on appeal that the trial court failed to follow the law in reaching its judgment and that the judgment of the court was contrary to the manifest weight of the evidence and was an abuse of discretion.

The Schomers' first contention is that the trial court erred in making its judgment without setting forth in its written order findings of fact on each of the factors listed in section 602(a) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 602(a)). They cite us to *Wurm v. Wurm* (1979), 68 Ill. App. 3d 168, 385 N.E.2d 894, and *In re Custody of Harne* (1979), 77 Ill. 2d 414, 396 N.E.2d 499, in support of their assertion that such a failure is reversible error. We would first point out

that the rule in *Wurm* has been refined by this court in *In re Custody of Melear* (1979), 76 Ill. App. 3d 706, 395 N.E.2d 208, and subsequent cases. We have therein held that no specific findings of fact need be made, although the record must show that the court, in the words of the statute, considered all relevant factors, including those enumerated in section 602. The *Harne* case is inapposite because it deals with a modification of a child custody judgment and reflects this State's policy of promoting familial stability by refusing to modify a prior child custody judgment without a finding of one or more of the factors listed in section 610 (a),(b) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 610(a), (b)). The case at bar does not deal with the modification of a child custody judgment. The order of June 27, 1979, awarded the Schomers temporary custody of Lisa and Andrew, "without prejudice to the rights of anybody or of the children." Trial was then set for July 25, and actually commenced on December 3. The June 27 order was temporary on its face and subject to a hearing on the merits to be held subsequently. In December, such a hearing on the merits was held and an order was entered on December 14. The December 14 order was the first, and only, final order rendered in this case. Therefore, it is clear that section 610, which applies only to modification proceedings, is not applicable to this cause.

Moreover, the standards set forth in the Marriage and Dissolution of Marriage Act at sections 602 and 610 are inapplicable to the case at bar because this case was never one involving a determination of custody under part VI of the Act (Ill. Rev. Stat. 1979, ch. 40, pars. 601 through 610), but rather involved pleas for adoption, pursuant to the Adoption Act (Ill. Rev. Stat. 1979, ch. 40, pars. 1501 through 1529) and for guardianship, pursuant to article XI of the Probate Act (Ill. Rev. Stat. 1979, ch. 110½, pars. 11—1 through 11—18). Even the Schomers' petition for temporary custody of the children was brought, not under part VI of the Marriage and Dissolution of Marriage Act, but pursuant to section 13(b) of the Adoption Act (Ill. Rev. Stat. 1979, ch. 40, par. 1516(b)), as a motion for the entry of an interim order in an adoption proceeding.

■■ Section 15 of the Adoption Act (Ill. Rev. Stat. 1979, ch. 40, par. 1519) states, "The welfare of the child shall be the prime consideration in all adoption proceedings." "No special findings of fact or certificate of evidence shall be necessary in any case to support the order." (Ill. Rev. Stat. 1979, ch. 40, par. 1517.) Section 1.1 of the Adoption Act (Ill. Rev. Stat. 1979, ch. 40, par. 1503) states: "This Act shall be construed in concert with the Juvenile Court Act [ch. 37, par. 701—1 *et seq.*], the Child Care Act of 1969 [ch. 23, par. 2211 *et seq.*], and the Interstate Compact on the Placement of Children [ch. 23, par. 2601 *et seq.*]." Nowhere in the statute is it stated that the Adoption Act is to be construed in concert with the Illinois Marriage and Dissolution of Marriage Act. The Schomers argue that the placement of both the Adoption Act and the Marriage and

Dissolution of Marriage Act in chapter 40 of the Illinois Revised Statutes requires such a concerted construction. This proposition is obviously incorrect. It is clear, therefore, that such findings as may be required by part VI of the Marriage and Dissolution of Marriage Act are not required in a proceeding for adoption.

The question next arises whether those factors which the court shall consider under section 602 of the Marriage and Dissolution of Marriage Act in a custody contest, are also to be considered by the court in a determination of guardianship under the Probate Act. Part VI of the Marriage and Dissolution of Marriage Act most often applies to divorced or separated parents, but also, by its terms, applies to persons other than parents seeking custody of a child (Ill. Rev. Stat. 1979, ch. 40, par. 601(b)(2)). We are thus confronted with the question of whether guardianship of the person and custody are the same thing.

■■ In certain cases, such as those involving an adult incompetent, it is clear that guardianship of the person is not equivalent to custody. In regard to a minor, "guardianship of the person" and "legal custody" are defined in sections 1—11 and 1—12 of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, pars. 701—11 and 701—12). Therein it is stated that guardianship of the person includes "the rights and responsibilities of legal custody except where legal custody has been vested in another person or agency." (Ill. Rev. Stat. 1979, ch. 37, par. 701—11(c).) The statutory outline of the duties of the guardian of the person of a minor, set out in the Probate Act (Ill. Rev. Stat. 1979, ch. 110½, par. 11—13(a)), also makes clear that guardianship of the person may include, but involves more than, custody. Accordingly, "[t]he court shall have control over the person and estate of the ward," and the guardian shall perform his duties "[u]nder the direction of the court." (Ill. Rev. Stat. 1979, ch. 110½, par. 11—13.) Therefore, "[o]n petition of any interested person or on the court's own motion, the court may remove a representative" for any of nine enumerated causes or when "there is other good cause." (Ill. Rev. Stat. 1979, ch. 110½, par. 23—2.) " 'Representative' includes * * * guardian * * *" (Ill. Rev. Stat. 1979, ch. 110½, par. 1—2.15.) It would, therefore, seem that, in the removal of a guardian, the court is not constrained to find the factors listed in section 610 of the Marriage and Dissolution of Marriage Act, even though such a guardian might also serve as a custodian of the child. However, the Uniform Child Custody Jurisdiction Act, effective September 11, 1979, is made applicable to child custody proceedings under part VI of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 601(a)). The Uniform Child Custody Jurisdiction Act states that " '[c]ustody proceeding' means proceedings in which a custody determination is one of several issues, and includes child neglect and dependency proceedings." (Ill. Rev. Stat. 1979, ch. 40, par.

2103.03.) If this court were to adopt the view that the Uniform Child Custody Jurisdiction Act is incorporated into the Marriage and Dissolution of Marriage Act in all respects, this language might indicate that the standards set forth in part VI of the Marriage and Dissolution of Marriage Act are to apply to those cases, such as the one at bar, where the determination of guardianship of a minor also determines the custody of that minor. However, it is clear that the only purpose of the Uniform Child Custody Jurisdiction Act is the determination of the proper forum for the trial of a custody dispute. Only that section of the Uniform Child Custody Jurisdiction Act vesting jurisdiction in the court (Ill. Rev. Stat. 1979, ch. 40, par. 2104) is specifically incorporated into the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 601(a)). The traditional discretion vested in the courts to determine guardianship according to the best interests of the child (*Layton v. Miller* (1975), 25 Ill. App. 3d 834, 322 N.E.2d 484) need not be constrained beyond the limitations imposed by the Probate Act itself. The standards set forth in the Marriage and Dissolution of Marriage Act are not mandatory in guardianship proceedings. Therefore, a court may remove a guardian without making findings of fact in accordance with section 610 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 610), as construed by *In re Custody of Harne* (1979), 77 Ill. 2d 414, 396 N.E.2d 499. Accordingly, a court may make an initial guardianship determination without reference to the standards set forth in section 602(a) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 602(a)), as construed by *In re Custody of Melear* (1979), 76 Ill. App. 3d 706, 395 N.E.2d 208. Despite this holding, we would observe that the preferable practice would be to consider, where relevant, the standards set forth in section 602 of the Marriage and Dissolution of Marriage Act, as these are important considerations in ensuring that the guardianship of a young child corresponds to the best interests of that child.

In the case at bar, the record indicates that the trial court did consider those factors enumerated in section 602 that were relevant to the case. Because the children's parents were both deceased, factor (1) of section 602(a) was irrelevant. Both of the children were below the age of 10 at the time of these proceedings. Therefore, the court did not abuse its discretion in failing to ask their preferences. We further note that under the Probate Act, the court need only consult a child as to his preference for a guardian when he has reached the age of 14. (Ill. Rev. Stat. 1979, ch. 110½, par. 11—5(c).) Evidence was presented as to all of the other relevant factors enumerated in section 602, and the record shows that these factors were considered.

■■ The Schomers next argue that the judgment of the court was an abuse of discretion because it did not correspond to the best interests of the

children and was contrary to the manifest weight of the evidence. We do not agree. The court declined to allow the children to be adopted by either of the contending sets of parties because it wanted to preserve visitation rights for all of the parties. This is in accordance with the expressed policy of our legislature, which guarantees visitation rights to the grandparents of orphans unless such would be contrary to the children's best interests. (Ill. Rev. Stat. 1979, ch. 110½, par. 11—7.1). As aptly stated by the trial court, the children are lucky to have four people who care enough about them to contend for their physical custody. The adoption of the children by either set of grandparents would terminate the relationship the children have enjoyed with the other set. A denial of both adoption petitions was, under the circumstances, in the best interests of the children.

The Schomers further contend that the court abused its discretion in failing to vest them with guardianship. They argue that the children have done well at home and in school under their care since the death of their mother. We agree that the children have done well under the care of the Schomers. Yet the Schomers offer no evidence that the children have suffered under the care of the Scheidts. The court took into consideration the fact that, while their mother was alive, the children spent considerably more time with the Scheidts than with the Schomers. This was a proper factor for the court to consider in arriving at its determination.

The Schomers maintain that they have a stronger claim because Mrs. Schomer is the natural grandmother of both of the children, whereas the Scheidts are the natural grandparents of Lisa only. Neither set of parties has suggested that the children be separated, and the courts of our State have shown a policy against the separation of siblings. Therefore, the matter of blood relationship, in the absence of a showing that it affected the best interests of the children, was not a factor which the court need have found determinative of this case. The Scheidts could just as persuasively have argued that, because both of them are blood relatives of Lisa and no one is suggesting the children be separated, they have the better claim.

The Schomers also maintain that they should have been awarded guardianship because they share the same religious beliefs as the children. The children, while in the temporary custody of the Schomers, attended parochial school. A guardian of the person of a minor has power over the nurture, tuition and education of his ward. (Ill. Rev. Stat. 1979, ch. 110½, par. 11—13(a).) He is, therefore, responsible for the ward's religious instruction. It is the policy of this State, as articulated in the Adoption Act, that "[t]he court in entering an order of adoption shall, whenever possible, give custody through adoption to a petitioner or petitioners of the same religious belief as that of the child." (Ill. Rev. Stat. 1979, ch. 40, par. 1519.) No such rule is set out in the guardianship sections of the Probate Act.

Nevertheless, a court may adopt such a practice in determining the best interests of the child in a given guardianship proceeding. However, the contention that the court erred in this matter is completely groundless. All of the parties are Roman Catholic. Mr. Scheidt admits to no longer practicing this religion. Yet Mrs. Schomer makes no showing that either she, her husband, or the children she has already reared have been strict adherents to the tenets of their faith. There is no showing that the entrustment of the children's religious training to the Scheidts will result in a radical change in their religious orientation.

The court, in arriving at its judgment, considered the fact that the Scheidts have been married to one another for 30 years and that Mr. Scheidt has been continuously employed at the same company for almost the whole of that time. Mrs. Schomer has been divorced and remarried, and between her divorce and remarriage lived with a third man for a number of years. Mr. Schomer has been divorced twice. The stability of the family into which a child is being placed is an important factor which a court may and should consider.

While Michelle was alive, she and the children spent considerable time with the Scheidts. Michelle and Charles, Jr., lived, for a time, just two doors away from the elder Scheidts. After the death of Charles, Jr., Michelle left Lisa in the sole care of the Scheidts for a year and a half, only visiting the child occasionally. From the time of the death of her husband, until her own death, Michelle's physical and emotional health were poor. Often she left the children with the Scheidts, ostensibly so that she could attend to an errand, and would not return for several days. The record indicates that the children were always adequately cared for during these periods. In addition, Mrs. Scheidt would provide Michelle and the children with material help, in the form of groceries, paid for from the earnings of Mr. Scheidt. These facts are clearly supportive of the court's disposition of this cause.

A judgment of this sort, ultimately involving the best interests of the children, will not be disturbed unless it is shown that the court clearly abused the broad discretion with which it is vested. Such an abuse is demonstrated by a showing that manifest injustice was done. The judgment of the court was not contrary to the manifest weight of the evidence. The court did not abuse its discretion. There was no manifest injustice in the determination of the case.

Therefore, the judgment of the Circuit Court of Will County is hereby affirmed.

Affirmed.

BARRY and STENGEL, JJ., concur.