**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220196-U

Order filed August 9, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| ILLINOIS DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES *ex rel.* TASHA P., | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| | ) | |
| Respondent-Appellant, | ) | |
| | ) | Appeal No. 3-22-0196 |
| v. | ) | Circuit No. 18-F-635 |
| | ) | |
| NANA W., | ) | Honorable |
| | ) | Joshua A. Dieden, |
| Petitioner-Appellee. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices McDade and Hettel concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's allocation of parenting time and order that the child attend school in the father's district were not against the manifest weight of the evidence. Affirmed.

¶ 2   Respondent-mother, Tasha P., appeals the trial court's April 14, 2022, order allocating parental responsibilities between herself and petitioner-father, Nana W., regarding their child, M.W. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    M.W. was born to the parties in November 2017, several months after the parties' relationship ended. Nana had regular contact with M.W. until Tasha sought an order of protection against Nana in the summer of 2018. An emergency order of protection was entered and extended several times until January 2019; Tasha also sought a plenary order of protection. A hearing was held on Tasha's request for a plenary order of protection in January 2019; Tasha's request was denied. Also in January 2019, Tasha moved with M.W. to North Carolina, where they resided until October 2019.

¶ 5    In November 2018, the Illinois Department of Healthcare and Family Services filed a complaint for support on behalf of Tasha. In January 2019, Nana petitioned for allocation of parental responsibilities and parenting time between himself and Tasha. Nana asserted that he was residing with his wife, his one-year-old son (M.W.'s half-sibling), and his mother; thus, he argued, it was in the best interests of M.W. to have a continuing and ongoing relationship with his relatives. Chantelle Porter was appointed as guardian *ad litem* (GAL) in November 2019.

¶ 6    On September 9, 2020, the trial court entered a temporary, agreed order allocating parenting time 65/35 in favor of Tasha and with the parties exchanging custody twice per week. Nana would have parenting time for approximately five days every two weeks (one four-day block and a single day the following week), with the remainder going to Tasha.

¶ 7    The matter proceeded to a bench trial in March 2022. Relevant here, Porter testified Tasha had been M.W.'s primary caregiver but she believed the best interests of M.W. would be served by equalizing parenting time between the parents. She explained that her recommendation was based in part on Tasha's representation that she would reside in Darien, Illinois; Nana lived in Bolingbrook, Illinois, so "[t]he distance between Darien and Bolingbrook would facilitate an equal parenting time schedule."

¶ 8        Porter further explained that she met with the parties in person in January and February 2020, and virtually in March 2020. In her view, the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child was the "primary" factor she considered. Both were good parents and there were no serious endangerment or deficiency issues. Porter opined, "I believe both parents are very well meaning and both parents verbally say that they want the child to have a relationship with the other parent. However, I believe that they might have different definitions of what coparenting or cooperation mean." Nana, she explained, showed more willingness to facilitate a positive coparenting relationship than Tasha; cooperation between the parents "just didn't even itself out."

¶ 9        Regarding education, Porter believed joint decision-making would be necessary and recommended that M.W. attend in-person preschool where Nana then resided. Nana wanted to enroll M.W. in preschool with his other child and was prepared to do so. Tasha was looking into Head Start programs but provided little information about them; she also indicated she wanted to homeschool M.W. because of the COVID-19 pandemic.

¶ 10       On cross-examination, Porter agreed that the school year beginning in August 2021 would have been the first year M.W. was eligible for preschool and that M.W. was not yet eligible for the COVID-19 vaccine. She did not evaluate the differences between the school districts in which each parent resided.

¶ 11       Nana, Tasha, and various family members also testified. Although most of this testimony is not pertinent to Tasha's arguments on appeal, Tasha did testify that she believed she could cooperate with Nana in raising M.W.:

> "I've asked several times for all of us to get together and collaborate as parents. I've asked for him[,] his wife, his family, for all of us to sit down. I've—before we stopped

communicating, I have invited him to events for [M.W.] I have shared videos with him, pictures of him. There is nothing that [M.W.] did that I didn't try to include them on, and I'm perfectly fine with including as long as it's safe."

Tasha also testified about her transportation difficulties. She lived with her husband, and the two shared a single car, which he drove to work. He left at 7 or 7:30 a.m. and returned between 5 and 8 p.m. As a result, Tasha did not have access to a motor vehicle unless she contacted her mother-in-law, who lived across the street. During the period governed by the parties' September 2020 agreed order, Nana would pick M.W. up and drop him off at the home of Tasha's mother-in-law, while Tasha's husband would drop M.W. off for the exchange. Further, Tasha did not want M.W. to attend school in Nana's district because it had below-average ratings.

¶ 12    The trial court made its oral ruling and entered a parental allocation judgment on April 14, 2022, awarding joint decision-making and 50/50 parenting time. The court gave "a significant amount of weight to [Porter's] investigation and opinion," but found neither parent's testimony "entirely credible" and gave "little to no weight" to the testimony of the other witnesses.

¶ 13    The court stated it considered all relevant statutory factors as to its allocation of parenting time but highlighted a few in particular. It found several factors neutral, including M.W.'s wishes ("Considering [M.W.]'s age and maturity, he is not able to voice a wish."), M.W.'s interaction with his parents and siblings, the mental and physical health of all involved, whether a restriction on parenting time was appropriate (finding no evidence a restriction was appropriate), the physical violence or threat of physical violence (finding no credible evidence of violence or threats), the occurrence of abuse (finding no evidence of abuse), and whether either parent was a sex offender (finding neither parent was a sex offender).

¶ 14    The court found that while Tasha had been M.W.'s primary caregiver and her household

had only one car, the majority of factors favored Nana. For instance, the court found Nana was proactive in trying to enroll M.W. in school, more willing to work with Tasha than vice-versa, and offered a more stable home environment. The court also found it would be beneficial for M.W. to attend the same school as his same-age sibling.

¶ 15 In contrast, the court discounted Tasha's transportation difficulties, finding that her husband and former mother-in-law had assisted in the past and that the distance between the current homes and transportation schedules did not present an obstacle to 50/50 parenting time. The court found Tasha's residency had been "sporadic, unclear, and inconsistent" in recent years. The court also found Tasha had frustrated attempts at cooperation. For instance, Tasha attempted to have M.W.'s name changed notwithstanding a previous agreement to the contrary; she left the State with M.W., without notice, after Nana filed his petition for parenting time and for reasons the court did not find credible; she attempted to surveil Nana for reasons the court did not find credible; and she was otherwise unwilling to work with Nana ("In essence, it's her way or the highway.").

¶ 16 The court awarded Nana parenting time every Monday through Wednesday, Tasha parenting time every Wednesday through Friday, and each parent alternating weekends. The judgment further ordered that M.W. attend public school in the school district where Nana resides.

¶ 17 Tasha timely appealed.

¶ 18 II. ANALYSIS

¶ 19 Tasha first argues the trial court's order granting Nana 50/50 parenting time was against the manifest weight of the evidence. The trial court allocates parenting time according to the best interests of the child. 750 ILCS 5/602.7(a) (West 2018).

"In determining the child's best interests for purposes of allocating parenting time, the

court shall consider all relevant factors, including, without limitation, the following:

(1) the wishes of each parent seeking parenting time;

(2) the wishes of the child, taking into account the child's maturity and ability to express reasoned and independent preferences as to parenting time;

(3) the amount of time each parent spent performing caretaking functions with respect to the child in the 24 months preceding the filing of any petition for allocation of parental responsibilities or, if the child is under 2 years of age, since the child's birth;

(4) any prior agreement or course of conduct between the parents relating to caretaking functions with respect to the child;

(5) the interaction and interrelationship of the child with his or her parents and siblings and with any other person who may significantly affect the child's best interests;

(6) the child's adjustment to his or her home, school, and community;

(7) the mental and physical health of all individuals involved;

(8) the child's needs;

(9) the distance between the parents' residences, the cost and difficulty of transporting the child, each parent's and the child's daily schedules, and the ability of the parents to cooperate in the arrangement;

(10) whether a restriction on parenting time is appropriate;

(11) the physical violence or threat of physical violence by the child's parent directed against the child or other member of the child's household;

(12) the willingness and ability of each parent to place the needs of the child ahead of his or her own needs;

(13) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child;

(14) the occurrence of abuse against the child or other member of the child's household;

(15) whether one of the parents is a convicted sex offender or lives with a convicted sex offender and, if so, the exact nature of the offense and what if any treatment the offender has successfully participated in; the parties are entitled to a hearing on the issues raised in this paragraph (15);

(16) the terms of a parent's military family-care plan that a parent must complete before deployment if a parent is a member of the United States Armed Forces who is being deployed; and

(17) any other factor that the court expressly finds to be relevant." *Id.* § 602.7(b).

Moreover, "[i]n allocating parenting time, the court shall not consider conduct of a parent that does not affect that parent's relationship to the child." *Id.* § 602.7(c).

¶ 20    A trial court's findings as to the best interests of the child are entitled to great deference, and an allocation of parenting time will not be disturbed unless that decision is against the manifest weight of the evidence. *In re Marriage of Whitehead & Newcomb-Whitehead*, 2018 IL App (5th) 170380, ¶¶ 15, 21. "A judgment is against the manifest weight of the evidence only if an opposite conclusion is apparent or if the findings appear unreasonable, arbitrary, or not based on the evidence." *Id.* ¶ 21. The appellant carries the burden to affirmatively show error on review. *In re Marriage of Smith*, 132 Ill. App. 3d 694, 702 (1985). We will affirm if there is any basis in the

record to support the court's findings. *In re Marriage of Ricketts*, 329 Ill. App. 3d 173, 177 (2002).

¶ 21　　　　Tasha argues the previous 65/35 allocation of parenting time in her favor should remain because the evidence overwhelmingly showed the previous allocation to be in M.W.'s best interests. Tasha contends that (1) changing the parenting time schedule would disrupt M.W.'s schedule, (2) M.W. wishes for her to have the majority of parenting time (although Tasha acknowledges that M.W. was four years old at the time of the judgment and had not expressed a preference verbally), (3) Tasha was M.W.'s primary caregiver during the first two years of his life, (4) M.W. has a strong relationship with Tasha's household, (5) M.W. is "well adjusted to his home with [Tasha]," though he has no school or community connection, and (6) M.W.'s needs as a young child weigh in favor of Tasha, the primary caregiver, retaining the majority of parenting time. See 750 ILCS 5/602.7(a)(2), (3), (5), (6) (West 2018). Reduced to its essentials, Tasha argues the trial court's decision was unreasonable because she is the primary caregiver and changing the allocation would require M.W. to adjust to a new schedule.

¶ 22　　　　With respect to 13 of the statutory factors, Tasha makes no argument that they weigh in her favor. See *id.* § 602.7(a)(1), (4), (7), (8), (9), (10), (11), (12), (13), (14), (15), (16), (17). Indeed, she observes that each parent wishes to have significant parenting time, each believes they can coparent cooperatively, and a restriction on parenting time is not appropriate. We further note that Tasha does not dispute several of the trial court's findings that weighed against her. Specifically, Tasha does not argue that the court's findings as to her attempts to frustrate cooperation with Nana or her sporadic residency history were against the manifest weight of the evidence. The court's reasoning is more comprehensive than Tasha suggests, and her argument overlooks these unfavorable findings.

¶ 23　　　　Considering the trial court's findings, we cannot say the court's decision was unreasonable,

arbitrary, or not based on the evidence. As Tasha observes, at the time of the judgment, M.W. was four years old and had not expressed a preference verbally. The trial court heard testimony from Porter, the GAL, who opined that both parties were good parents without any endangerment issues and recommended that the parties share equal parenting time. See *In re Marriage of Virgin*, 2021 IL App (3d) 190650, ¶ 51 ("Though the circuit court is not bound by the GAL's recommendation, a GAL is the eyes and ears of the court." (Internal quotation marks omitted.)). Tasha offers no reason to discount Porter's testimony and does not refute the trial court's unfavorable findings.

¶ 24    In her reply brief, Tasha cites *Virgin* for the proposition that a 50/50 allocation is inappropriate because it would " 'engender dissention between the parties and instability in the child's environment.' " *Id.* ¶ 48 (quoting *In re Marriage of Oros*, 256 Ill. App. 3d 167, 169 (1994)). *Virgin* is distinguishable. There, the appellate court noted that the record was "replete with evidence that the parties have too much animosity to sufficiently cooperate" and "[t]he GAL testified that this case presented one of the highest conflict cases he had ever seen in his experience as a GAL and attorney." *Id.* ¶ 49. The trial court had also deviated from the GAL's recommendation. *Id.* ¶ 37. Here, in contrast, the GAL testified that both parties were well meaning and wanted the other parent involved, Tasha herself testified that she believed she could cooperate with Nana, and the trial court implemented the GAL's recommendation.

¶ 25    While a change of schedule for the child may weigh in favor of retaining the prior allocation, we cannot say the court's 50/50 allocation in reliance on the GAL's recommendation was unreasonable on that basis alone. The change in schedule was relatively minor in that the parties would continue to exchange custody twice per week. Tasha essentially asks us to reweigh the evidence, which we will not do. See *Jameson v. Williams*, 2020 IL App (3d) 200048, ¶ 51 ("It is well settled that a reviewing court's function is not to reweigh the evidence or assess witness

9

credibility and set aside the circuit court's decision simply because a different conclusion may have been drawn from the evidence."). The trial court's allocation of parenting time was not against the manifest weight of the evidence.

¶ 26    Second, Tasha argues the trial court's decision that M.W. shall attend and continue to attend school in Nana's district was against the manifest weight of the evidence because it was not based on the evidence. Instead, she argues, the evidence overwhelmingly showed it was in M.W.'s best interests to attend school in her school district. We disagree. At the time of the judgment, M.W. had not yet attended preschool. Nana was prepared to enroll M.W. in his district's school. Going to school in Nana's district would afford M.W. the experience of going to school with Nana's other child, M.W.'s half-sibling. In contrast, Tasha was looking into Head Start programs but provided little information about them and also suggested the possibility of home schooling. Based on this information, Porter recommended that M.W. attend school where Nana resides. Moreover, Tasha cites no evidence in the record showing that her school district was superior to Nana's. Thus, Tasha has not demonstrated that the trial court's ruling in this regard was against the manifest weight of the evidence.

¶ 27    Tasha also claims the decision was unreasonable because requiring M.W. to attend school in Nana's district would be inconvenient for her personally. Although "the distance between the parents' residences, the cost and difficulty of transporting the child, each parent's and the child's daily schedules, and the ability of the parents to cooperate in the arrangement" is a relevant factor in the analysis (750 ILCS 5/602.7(a)(9) (West 2018)), we cannot conclude that the trial court's decision was unreasonable on that basis alone. Indeed, the trial court found that Tasha's husband and former mother-in-law had assisted her with transportation in the past, a finding Tasha also does not dispute. Accordingly, we cannot say the decision was against the manifest weight of the

evidence.

¶ 28                                    III. CONCLUSION

¶ 29        The judgment of the circuit court of Du Page County is affirmed.

¶ 30        Affirmed.